**Lois J. HAYNES, for herself and all others similarly situated, Plaintiffs–Appellants,**

v.

**BANK OF WEDOWEE, a State Bank, Defendant–Appellee.**

No. 79–2801.

United States Court of Appeals, Fifth Circuit. Unit B

Jan. 15, 1981.

Rehearing Denied Feb. 25, 1981.

Edward Still, Birmingham, Ala., for plaintiffs–appellants.

Lewis H. Hamner, Jr., Roanoke, Ala., for defendant–appellee.

Before GODBOLD, TJOFLAT and VANCE, Circuit Judges.

GODBOLD, Circuit Judge:

The issue before us concerns whether the Equal Credit Opportunity Act, 15 U.S.C. § 1691 et seq (1976) (ECOA), allows a lending institution to consider the bankruptcy of a debtor's spouse when determining whether to declare a debtor in default on a loan. We hold that the Bank of Wedowee, appellee, legitimately considered the bankruptcy of appellant's husband when it declared her in default and, in satisfaction of her debt, applied a portion of the funds in a joint checking account she shared with her husband. Accordingly, we affirm the district court.

In the summer of 1975 appellant's husband called the bank president about a car loan. Appellant then visited the bank, obtained a loan secured by the car and payable in 30 monthly installments, and signed as sole *obligor* of the note. The instrument contained standard acceleration provisions permitting the bank to declare the entire indebtedness due if, *inter alia*, appellant defaulted upon any of her monthly payments, a petition of bankruptcy were filed against any of her assets, or the bank deemed itself insecure. Moreover, the note authorized the bank to apply any funds or

credit held by appellant at the bank to satisfy the debt. Before the loan was made and until after default, appellant and her husband had a joint checking account at the bank.

Appellant was often tardy in making her monthly payments on the loan. On one occasion she fell three months behind. The bank allowed her to catch up, but late payments continued. Several checks written on the joint account were returned for insufficient funds. Finally, in August 1977, the bank's president heard a rumor that appellant's husband had declared bankruptcy. This prompted him to call appellant just prior to the date her August payment was due. Appellant verified the rumor but insisted that she had no intention of declaring bankruptcy. Both parties agree that the bank president told appellant that if she did not make payment on her loans[1] the bank would be forced to take legal action against her. Appellant then told the bank president that she would make payment as soon as she received a check from the sale of chickens that she had raised.

The bank president testified that after this conversation he no longer considered appellant creditworthy. He reviewed the record of the joint account and appellant's loan payment record. When no payment was made on the August payment date, the president decided to accelerate the car loan. Without appellant's knowledge he applied slightly over half of the funds in the joint checking account toward satisfaction of the note. Appellant learned of this a week or

10 days later when she came to the bank and paid off the balance of the note.

Appellant sued the bank, alleging violations of the Federal Truth in Lending Act, 15 U.S.C. § 1601 et seq., and ECOA, 15 U.S.C. § 1691. Only two ECOA claims are before us.[2] One alleges that the bank violated § 1691(a)[3] by accelerating appellant's loan based on her marital status. The other alleges that the bank violated § 1691(d)[4] by failing to inform her why it was accelerating the loan and applying funds in the joint account. The jury found for appellant on these claims and awarded her $2500. The district judge granted the bank's motion for judgment n. o. v., holding that the ECOA did not prohibit the bank from considering the bankruptcy of appellant's spouse.

## I. DISCRIMINATION ON THE BASIS OF MARITAL STATUS.

Our standard of review for a judgment n. o. v. is clear. We must consider the evidence most favorable to the party opposing the motion and determine whether it might lead reasonable persons to different conclusions, *Boeing Co. v. Shipman*, 411 F.2d 365, 374-75, (5th Cir. 1969) (en banc).

Applying this standard, we must conclude that the bankruptcy of appellant's husband was the factor that ultimately triggered the bank's decision to accelerate her loan. The jury necessarily found this under the district court's instructions:

I charge you that unless the plaintiff has proven by a preponderance of the evidence that the predominant reason of

---

1. Appellant had another loan with the bank, but the bank took no action on this loan so it is not involved in this case.

2. The Truth in Lending claims were settled or decided for appellant. The district court rendered summary judgment for the bank on the ECOA claims, but this court reversed, *Haynes v. Bank of Wedowee*, 594 F.2d 239 (5th Cir. 1979). On remand a jury returned a verdict for appellant on two of the ECOA claims, and they form the basis of this appeal.

3. 15 U.S.C. § 1691(a) provides in part:
It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction–

(1) on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract) . . . .

4. 15 U.S.C. § 1691(d) provides in part:
(2) Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor . . . .
(3) A statement of reasons meets the requirements of this section only if it contains the specific reasons for the adverse action taken.

the defendant bank for the application of the funds in the joint checking account to the payment of the debt ... was the bankruptcy of the plaintiff's husband and that the defendant would not have done so except for such factor you cannot return a verdict for the plaintiff on her ... claim.

Sufficient evidence exists to justify the jury's finding. Both parties agree that a day or two before the bank took action the bank ·president called the appellant and opened the conversation with an inquiry about her husband's bankruptcy. In addition the bank president testified that after this conversation, he no longer considered appellant creditworthy.

When entering the j. n. o. v., however, the district judge held that even if the bankruptcy triggered the final decision to accelerate appellant's note, the bank's action was not discrimination on the basis of marital status within the meaning of ECOA. Our task in reviewing the district judge's holding is threefold. We must decide (1) whether the ECOA permitted the bank to consider the bankruptcy of appellant's spouse when deciding whether to accelerate her note; (2) whether sufficient uncontroverted evidence exists to find that the bank relied upon the joint account when extending the loan to appellant; and (3) whether the bankruptcy threatened the integrity of that joint account.

### A. *ECOA, joint accounts and bankruptcy of a spouse.*

Appellant contends that acceleration of her loan based upon her husband's bankruptcy was acceleration based on her marital status in violation of § 1691(a). However, appellant does not rely on a disparate impact test to establish a link between these two characterizations of the bank's

action.[5] She relies instead on a literal reading of a few regulations promulgated under the ECOA and asserts that the bank president's inquiry about her husband's bankruptcy lies outside those situations in which the regulations permit a creditor to request information about a debtor's spouse. The regulations prohibit inquiries about a debtor's[6] spouse except where:

 (i) The spouse will be permitted to use the account; or

 (ii) The spouse will be contractually liable upon the account; or

 (iii) The applicant is relying on the spouse's income as a basis for repayment of the credit requested; or

 (iv) The applicant resides in a community property State ...; or

 (v) The applicant is relying on alimony, child support, or separate maintenance payments from a spouse ... as a basis for repayment of the credit requested.

12 CFR § 202.5(c)(2). Appellant urges that the third exception–the only one relevant–is not applicable because any doubt that her income was repaying the loan was removed when she responded to the bank president's inquiry about her husband's bankruptcy with the statement that she would pay off the loan when she received her chicken money.

■ Her argument misses the mark. If the bank relied upon the joint account when it extended the loan, appellant could not unilaterally erase that reliance when the account was subsequently threatened by the bankruptcy of one of its joint owners. Rather, the question is whether the ECOA permitted the bank to rely on the joint account in extending the loan even though

---

**5.** ECOA regulations endorse use of the disparate impact test to establish discrimination, 12 CFR § 202.6(a) n.7. While a creditor's reliance on joint account assets may detrimentally affect married individuals who typically place assets in joint accounts with their spouse, we are not presented with a case where we must determine whether under the disparate impact test, such reliance violates the ECOA.

**6.** Instead of "debtor" the regulations use the term "applicant," but as defined, this term includes not only those individuals who seek credit but also those who, like appellant, have received credit, 12 CFR § 202.2(e).

the bank president did not explicitly tell the appellant about that reliance before he extended the loan.

We have found no ECOA cases dealing with this question. The legislative history clearly indicates, however, that Congress did not intend for ECOA to restrict the ability of creditors to formulate "valid and reasonable criteria" through which they might assess an individual's creditworthiness, S.Rep.No.278, 93rd Cong., 1st Sess. (1973).

In conformance with Congressional intent, ECOA and the regulations thereunder suggest that a creditor under some circumstances may consider joint accounts held at the creditor's institution when extending a loan to a married person.[7] The regulations provide that a creditor is not prevented from

> considering the marital status of an applicant or the source of an applicant's income for the purpose of ascertaining the creditor's rights and remedies applicable to the particular extension of credit and not to discriminate in a determination of creditworthiness.

12 CFR § 202.6(b) n.8.

If in ascertaining its rights and remedies the bank could look to appellant's marital status and the source of her income, it also could look to funds she held at the bank since those funds would play a role in determining her ability to repay. One of the remedies available to the bank was the right of setoff against funds of appellant held by the bank, see *King v. Porter*, 230 Ala. 112, 160 So. 101 (1935). State law concerning joint accounts also had an impact upon the bank's rights and remedies. ECOA permits creditors to consider state law. "Consideration or application of State property laws directly or indirectly affecting creditworthiness shall not constitute discrimination for purposes of this subchapter," § 1691d(b). Alabama law entitled appellant to write checks on any or all of the

funds of the joint account in repaying the loan, see Ala. Code, § 5–1–24 (1975) (in effect when the loan was extended). The bank could thus look to that account when ascertaining its rights and remedies, and, having looked to the joint account when extending the loan, it could consider the effect of the spouse's bankruptcy upon appellant's ability to repay and upon its remedies against the account.

B. *The bank's reliance on the joint account.*

■ In granting the j. n. o. v. the district judge stated only that it was "rational" to assume that the bank extended appellant credit "based partially upon her maintenance of a joint account with her husband." Measured by *Boeing*, the record adequately supports the district judge's conclusion. The setoff provision in the printed portion of the note indicates that the bank, in framing its rights and remedies, relies as a matter of course on accounts that its debtors hold at the bank. The bank president testified without contravention that checking habits are a major component of creditworthiness. This fortifies a conclusion that the bank relied on the joint checking account when extending the loan. Furthermore, when appellant failed to make the August payment, the bank president did what one would expect of a creditor who had relied on the joint account: he checked the balance of the account and exercised the remedy against that account afforded him under the terms of the note.

The appellant presented no evidence that when seeking the loan she offered any information to the bank relating to her income separate and apart from the joint account. Indeed, the record shows no assets other than the car and the joint account on which the bank could have relied when extending the loan. Faced with evidence indicating that the bank relied at least in part on the account in extending

---

7. The bank did not inquire about appellant's marital status when extending the loan. There was no need to do so; her husband already had called the bank and stated that his wife was coming in to obtain a loan. Moreover, it was unnecessary for the bank to inquire whether appellant had a joint account with her husband; the joint account already existed.

the loan and a total absence of evidence indicating otherwise, we are unable to find that a reasonable jury could have concluded that the bank did not rely on the joint account, *see Turner v. Southern Ry. Co.*, 437 F.2d 1352 (5th Cir. 1971).

### C. *Effect of the bankruptcy on the joint account.*

■ The bankruptcy of appellant's husband threatened that portion of the joint account traceable to his contribution. A trustee in bankruptcy is vested with title in any property which the bankrupt "could . . . have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered," 11 U.S.C. § 110(a)(5) (1976) (in effect at the time of the husband's bankruptcy). Under Alabama law a husband's share of joint property is subject to the claims of his creditors, *see Shrout v. Seale*, 287 Ala. 215, 250 So.2d 592 (1971). Moreover, money jointly possessed by husband and wife is presumptively held in equal shares subject to proof of each spouse's contribution, *see Vaughan v. Borland*, 234 Ala. 414, 175 So. 367 (1937); *Grant v. Grant*, 49 Ala.App. 559, 274 So.2d 329 (1973). Because it is difficult, if not impossible, to trace the sources of deposits to a joint account and because either joint account holder is free to write a check on the account, the bank had no way of knowing what portion of appellant's joint account was threatened by her husband's bankruptcy, *see* 10 Am.Jur.2d *Banks* § 374 (1963). Under Ala. Code § 5–1–24 (1975), appellant could write checks on the entire balance of the joint account, and her husband's bankruptcy could potentially shrink the balance of that account.[8] The bankruptcy therefore posed a threat to the integrity of the joint account.

Having concluded that the bank could justifiably rely on the joint account in extending the loan and having found sufficient evidence under the *Boeing* standard to

support the judgment n. o. v., we hold that the bank's consideration of the bankruptcy in accelerating the loan did not constitute discrimination against appellant on the basis of her marital status within the meaning of § 1691(a).

### II. NOTIFICATION REQUIREMENTS UNDER ECOA.

The judgment n. o. v. also overturned the jury's favorable verdict on appellant's second claim, which alleged that the bank violated the ECOA by failing to notify her after it accelerated her loan.

The ECOA requires a creditor to notify a debtor of any adverse action taken with regard to an account and the reasons for that action, 15 U.S.C. § 1691(d)(2) and (3). The statute defines adverse action as

> . . . a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested. Such term does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit.

§ 1691(d)(6). The regulations define the term more precisely:

> (c) *Adverse Action.* (1) For the purposes of notification of action taken, statement of reasons for denial, and record retention, the term means:
>
> . . . . .
>
> (ii) A termination of an account or an unfavorable change in the terms of an account that does not affect all or a substantial portion of a classification of a creditor's accounts . . . .
>
> . . . . .
>
> (2) The term does not include:
>
> . . . . .

---

**8.** As it turned out, the husband's creditors did not seize any portion of the joint account, but that does not alter the reality that at least some portion of the account was available to the bankruptcy trustee to satisfy his creditors' claims.

(ii) Any action or forbearance relating to an account taken in connection with inactivity, default, or delinquency as to that account....

12 CFR § 202.2(c). The regulations further provide that where a creditor's action falls within the definitions of what is adverse action and what is not adverse action, the latter definition is controlling, 12 CFR § 202.2(c)(3).[9]

Appellant contends that she was not in default when the bank accelerated and that as a result the application of funds in the joint account constituted adverse action. This is based upon two theories. First, she contends that her note could be construed to include a mandatory 10 day grace period for payments. She points out that the acceleration clause was in small print while a provision that late charges would be assessed for payments past due more than 10 days was in large print at the top of the loan agreement.

Appellant cites no authority indicating that the large print provision prevails over the small print acceleration clause. Moreover, the provisions are not inconsistent. The acceleration clause allows, but does not require, the bank to accelerate the loan if a monthly payment is not made on the date due. The late charge provision applies to payments more than 10 days past due. Thus, the late charge provision by its terms applies to delinquent payments and simply gives the bank an alternative remedy should it elect not to accelerate. Appellant's construction would have us extend the due date by 10 days, but this interpretation flies in the face of the wording of the provision on which she relies.

Appellant's second theory to escape default is akin to waiver. She presented evidence that the bank did not consider all notes with overdue monthly payments to be in default. Appellant had been tardy in her payments quite often, but the bank had never previously declared her in default or accelerated her note. Some courts have held that a pattern of accepting late pay-

ments may constitute waiver of the right to accelerate based on subsequent late payments, *see* 97 A.L.R.2d 997, § 5 and cases cited therein. However, courts generally hold that acceptance of late payments does not constitute waiver of the right to accelerate based upon other grounds of default, *see Garst v. Johnson*, 251 Ala. 291, 37 So.2d 183 (1948). Several factors in addition to appellant's late payment precipitated the August 1977 acceleration of her loan, including (as the jury reasonably found) the bankruptcy of her husband, and we have concluded that the bank permissibly considered the bankruptcy in declaring appellant in default. We therefore conclude that appellant was in default at the time her note was accelerated and that the acceleration was not adverse action within the meaning of 12 CFR § 202.2(c).

The district court did not err in granting a j. n. o. v. for the bank. The judgment below is AFFIRMED.

---

**9.** Appellant has not raised, and therefore we do not reach, whether the adverse action definitions in the statute and the regulations are inconsistent.