160 So. 101

### KING v. PORTER.
#### 7 Div. 275.

Supreme Court of Alabama.

Feb. 28, 1935.

Haralson & Son, of Fort Payne, and Ball & Ball, of Montgomery, for appellant.

Wm. B. McCollough, of Birmingham, and C. A. Wolfes, of Fort Payne, for appellee.

THOMAS, Justice.

An appeal from a decree of the probate court against an administrator on final settlement.

The administrator, C. D. King, had filed his accounts for annual settlement; the surety on his bond had failed; there was due insistence for a new bond; the administrator resigned, and his accounts so filed were restated, presented, and passed upon as his final settlement with C. V. Porter as administrator de bonis non of the Smith estate; and there was a decree for succeeding administrator.

These accounts and the decree rendered in favor of the succeeding administrator were held to show an excess of receipts over disbursements against King as administrator of $15,861.63, as the "balance on hand." These funds are shown to have been duly deposited in the First National Bank of Crossville to the credit of "C. D. King as administrator of the estate of S. P. Smith, deceased." Dr. Smith, the decedent, was president of the First National Bank of Crossville to the time of his death; owned 80 of the 200 shares of its capital stock; had theretofore deposited on interest and checking accounts sums larger than that dealt with in several respects by the final decree from which the appeal is prosecuted; and maintained that relation at the time of his death.

From March, 1933, and at the time of King's resignation and the final settlement in question, these trust funds, in general checking account and on time interest-bearing certificates, on deposit with the First National

Bank of Crossville in the name of King as administrator of the Smith estate, were affected by, or subject to, the bank moratorium announced by the superintendent of banks, to whose authority that bank was subject under the law, and by which this and other state banks were prevented from making payments on deposits, except in the limited amounts thereafter permitted in payment on such claims.

██ Such sums not being subject to withdrawal or disbursement to distributees or heirs at law, the question is: Was that administrator properly required by the final decree to pay moneys not available in the Crossville Bank when the moratorium was declared, and to account therefor to Porter, the succeeding administrator de bonis non of the Smith estate? Such was the effect of the decree of the probate court in favor of Porter, the administrator de bonis non, and against King, resigning as administrator and settling his trust accounts.

After the decree was rendered, King died, and this appeal is duly prosecuted here by his administratrix and wife, Mrs. Olive W. King.

It is established in this jurisdiction that a personal representative of a decedent's estate may, under recognized conditions, make a general deposit of the funds of that estate, as such trust funds, to his account in a representative capacity, if such deposit be made in a reputable bank for safe-keeping, payment of debts, and distribution in the due administration of the estate according to law.

In Chancellor v. Chancellor, 177 Ala. 44, 58 So. 423, 45 L. R. A. (N. S.) 1, Ann. Cas. 1915C, 47, the rule is thus stated, that a personal representative may deposit moneys temporarily in some responsible bank or banking house, and, if he acts in good faith and with discretion in depositing and keeping the trust fund in his trust account, and such funds are lost by failure of that bank, such personal representative is not liable for such a loss.

What constitutes a reasonable temporary deposit of such funds for safe-keeping in the due administration of an estate depends upon the particular facts and reasonable necessities of each fund and its due administration. First Nat. Bank of Opp v. Weaver, 225 Ala. 160, 163, 142 So. 420, 88 A. L. R. 201.

The rule of the Chancellor decision was approved in the Weaver Case, supra, where the *executor* sought to be charged for the deposit and trust fund *was the bank of deposit*. The observation made there was:

" * * * We are of the opinion that under the facts here disclosed there appears no self-dealing or advantage or profit within the condemnation of the rule of the decisions. Any benefit derived was wholly indirect and incidental, and it would seem that the case differs from that of Elmore v. Cunninghame, supra [208 Ala. 15, 93 So. 814], only in degree, and not in kind.

"We conclude, therefore, that the mere routine general deposit in good faith of the funds of the estate by an executor in its solvent bank does not, without more, constitute any such use thereof by the executor as to subject it to a liability for interest, and that the nomination of the bank as executor in the will indicates implied authority on the part of the testator that the funds may be so deposited without penalty." First Nat. Bank of Opp v. Weaver, 225 Ala. 160, 163, 142 So. 420, 422, 88 A. L. R. 201.

There is analogy in cases of guardianship, though the rule as to the general right of investment of trust funds is not the same. Bates v. Jones, 224 Ala. 82, 139 So. 242; Barnes et al. v. Clark et al., 227 Ala. 651, 151 So. 586, 90 A. L. R. 637.

██ We are not persuaded that the decision in the Weaver Case, supra, bears analogy as to the deposits made by Smith of his respective funds in like large sums. It is not a question of implied authority from the decedent that his moneys may remain or be on deposit for a reasonable time and under like circumstances; it is that of whether the continued deposit may be permitted to exist in the same bank by his administrator without penalty, and whether the same question is presented or applies to both trust funds in checking and interest-bearing accounts. When the record is considered, it is apparent that the deposits to King's account in a representative capacity were "temporary deposits," within the meaning of the decisions requiring trust funds and moneys of an estate to be collected and kept, for the protection of legal obligations of the estate, and for the due distribution thereof according to law and the orders of the court. That is to say, that decedent was not only a large holder of the bank's stock, but was the superior or chief executive officer of that institution, and deposited his moneys in like large amounts on interest and checking accounts; that his personal representative was permitted, under continued like general conditions of the bank, to allow these funds to remain there, as and where decedent placed them, within the rule of the Chancellor and Weaver Cases, supra. That is to say further

that the evidence shows without dispute that the bank was a good and going institution until its business functions as to distributions were interrupted or suspended by the course of events—the necessity of the estate to protect against superior liens or foreclosures, the eventuation of which would extinguish the large equities in real properties that the bank held—and by the moratorium, of which all courts take judicial notice. Hodge et al. v. Joy et al., 207 Ala. 198, 92 So. 171.

We may here observe that the personal representative testified with a directness that impresses us with its truth. Among other things, he said that after Smith's death he transferred from the Albertville National Bank $10,200 on April 6, 1929, and put it on deposit; that like deposit was made in July from the First National Bank of Fort Payne; that he thereafter made distribution of sums aggregating $45,500; that the condition of the Crossville Bank when he made these deposits was good, solvent, and able to pay all of its liabilities as they became due.

Like tendency of evidence is to be found in the report of the chief examiner of State banks.

It is further shown, that before and until the moratorium was declared the Crossville Bank had not failed to pay at maturity its obligations and had total bank assets of $82,-000.00, consisting of stocks and real estate mortgages; that the bank owed only $28,000 or $29,000 to the R. F. C., and had deposits of $35,000, including the Smith deposits; and that in witness' best judgment the bank would probably be able to pay in full "about November."

The evidence, considered as a whole, impresses us that at the time of these large deposits, with which the administrator is charged, there were direct loans or deposits by Smith with his bank—the interest account maturing January 16, 1934. His administrator was not liable therefor in principal or interest, but was erroneously held liable for the deposits subject to check and set-off of sums due by Smith to the bank under the rule as to the Lindsey guaranty, which will be hereafter considered. The claim by reason of the transfer of the Lindsey note should have been declared on final settlement as being held subject to Porter's claim against the bank as administrator de bonis non of the Smith estate. King, as outgoing administrator, is absolved from liability for the two funds or deposits, and the administrator de bonis non of

the Smith estate is invested with authority therein and thereover to the end of their collection or due settlement under the law with that bank or its legal representative.

■ The Lindsey credit claimed by extinguishment of Smith's debt to the bank on the note in question, in the sum of $2235.52, was that of an absolute payment by Smith of his guaranty. Ehl et al. v. J. R. Watkins Medical Co., 216 Ala. 69, 112 So. 426. Smith died on March 12, 1929; the administration of his estate began on March 18th; the Lindsey note and its guaranty were of the date of October 15, 1927, renewal January 15, 1929 (during Smith's life), and payable on March 15, 1929. The claim was acknowledged and book entry payment entered by the personal representative on April 2, 1931—more than twelve months after administration and due date of the note. Had the claim been acknowledged by payment within the time allowed by law for presentation (and according to its material facts), it would have fallen within the influence of McCollum v. McCollum et al., 218 Ala. 500, 119 So. 232, and Jones & Co. v. Peebles, 130 Ala. 269, 30 So. 564, as affecting the general estate of decedent.

The book entry or payment having been entered, made, or evidenced at a time that was beyond the period for presentation of claim against a decedent's general estate, as provided by statute, section 5815, Code, and there being no formal presentation thereof, it is insisted that for this reason the action of the trial court in the disallowance of that claim of credit by the administrator was without prejudicial error. McClure v. Pettyjohn et al., 226 Ala. 156, 145 So. 478; Brannan v. Sherry, 195 Ala. 272, 71 So. 106; Smith et al. v. Nixon et al., 205 Ala. 223, 87 So. 326; Burgess et al. v. Burgess et al., 201 Ala. 631, 79 So. 193; Wright v. Menefee, 226 Ala. 55, 145 So. 315; O'Neal et al. v. Mason (Ala. Sup.) 155 So. 567 [1]. Such would be the case if the facts brought the act and claim within the mandatory provisions of the statute and the requirements of a due presentation to bind the general estate of decedent.

As to the requirements of a due presentation of a claim against a decedent's estate, where the personal representative has an interest, it is further insisted that had King, as the chief and acting executive officer of the bank—as cashier—and as administrator of Smith's estate, acknowledged the liability of Smith and paid the same within the period of the statute, it would have been illegal, since

---

1 229 Ala. 142.

his position was equivocal and antagonistic with reference to the rights of the two principals. And such dual and antagonistic relation of an agent or trustee may not assume to the prejudice of one of his principals. Seeberg v. Norville et al., 204 Ala. 20, 85 So. 505; Holcomb et al. v. Forsyth, 216 Ala. 486, 491, 113 So. 516. This is beside the case, as we shall not indicate.

The question recurs whether the statute of non-claim applied to the banker's act in the enforcement of its common-law lien, and whether that done by King in a dual capacity was more than the enforcement of its lien against testator's moneys subject thereto under the material facts entering into the whole transaction.

■ It is a recognized principle that, in order to establish a set-off, the cross-demands must be mutual; that is, due from one party to another in the same right. First Nat. Bank of Abbeville v. Capps, 208 Ala. 207, 94 So. 109; Stinson v. Lanier, 223 Ala. 62, 134 So. 793; Bay Minette Land Co. v. Stapleton, 224 Ala. 175, 177, 139 So. 342, and authorities; Morse on Banks and Banking (3d Ed.) vol. 1, § 334.

■ It is further settled that a bank or broker *has a lien on all moneys and funds of a depositor or customer, coming into his or its possession* in due course of business, *for any balance of general account due from the customer.* In re Tallassee Manufacturing Co., 64 Ala. 657; National Bank of Commerce v. Morgan, 207 Ala. 65, 92 So. 10, 24 A. L. R. 897; Batson v. Alexander City Bank, 179 Ala. 490, 497, 60 So. 313; Wynn, as Administrator, v. Tallapoosa County Bank, 168 Ala. 469, 489, 53 So. 228; Farmers' & Merchants' Warehouse Co. v. Perry, 218 Ala. 223, 118 So. 406; Bank of Guntersville v. Crayter, 199 Ala. 599, 75 So. 7, L. R. A. 1917F, 460; Tatum v. Commercial Bank & Trust Co., etc., 193 Ala. 120, 126, 69 So. 508, L. R. A. 1916C, 767; Morse on Banks and Banking (3d Ed.) vol. 2, § 563.

Statement of this common-law lien was made by Lord Kenyon in Davis v. Bowsher, 5 T. R. 488, 492, 3 Durnford & Easts Reports, 247, saying: "I am clearly of opinion that by the general law of the land a banker has a general lien upon all the securities in his hands belonging to any particular person for his general balance."

In Bank of Metropolis v. New England Bank, 1 How. 234, 239, 11 L. Ed. 115, Mr. Chief Justice Taney said: "* * * It has been long settled, that wherever a banker has advanced money to another, he has a lien on all the paper securities which are in his hands for the amount of his general balance, unless such securities were delivered to him under a particular agreement."

These statements have since been followed by the United States court (Joyce v. Auten, 179 U. S. 591, 592, 21 S. Ct. 227, 45 L. Ed. 332; Reynes v. Dumont, 130 U. S. 354, 9 S. Ct. 486, 32 L. Ed. 934, 944; 1 Jones on Liens [2d Ed.] § 244), and were approved in Re Tallassee Manufacturing Co., 64 Ala. 567, 595, where Mr. Chief Justice Brickell observes: "*By a particular agreement, the lien may be excluded; but express agreement is not essential to its origin or continuance. It is given by the law,* upon the presumption that it is upon the faith of moneys and securities coming into the possession of the banker, in the course of general dealings, not especially devoted to other uses, a balance is suffered to accumulate against the customer. Independent of any express agreement * * * *they have a clear legal right to retain and enforce them [bonds] for the balance ascertained to be due them.*" (Italics supplied.)

The rule was later stated by this court in Tatum v. Commercial Bank & Trust Co., 193 Ala. 120, 124–126, 69 So. 508, 510, L. R. A. 1916C, 767, as follows:

"The reasoning applicable to the facts stated in this plea, is thus stated by Mr. Morse in his book on Banks and Banking: 'If the bank, at the maturity of a note held by it, holds funds that, by the scratch of a pen, it could apply upon the note, thus securing itself, it is difficult to see why neglecting so easy a means of security is not as improper as giving up collateral expressly designated for the purpose of securing the note.' 2 Morse on Banks and Banking (3d Ed.) § 563. * * *

" 'In an action by a bank against sureties on a promissory note discounted by it, it is no defense that before maturity the principal directed the bank to pay the note at maturity out of his general deposit in the bank, that the bank failed to do so, and subsequently allowed the principal to check the money out of the bank, although it knew of the suretyship at all times, and the deposit was sufficient to pay the note. Second Nat. Bank v. Hill, 76 Ind. 223, 40 Am. Rep. 239. See, also, the case of National, etc., Bank v. Peck, 127 Mass. 298, 34 Am. Rep. 368.'

"That a bank may so apply deposits has been decided by this court. In the case of Wynn, Adm'r v. Tallapoosa County Bank, 168 Ala. [469] 489, 53 So. 228, it is said: 'As to a general deposit the bank has a right to set-off as for the balance of the general account of

the depositor, and of course so long as that balance is in favor of the depositor the lien or right has neither existence nor validity; but the moment any advance or loan by the bank is made to the depositor—in the form of an overdraft, a discount, acceptance, etc.— then the lien or right is born, and may be applied by the bank (and the bank only) to the payment of such indebtedness till it is fully discharged. Morse on Banks and Banking, §§ 324, 334; Lehman's Case, 64 Ala. 567; Dean v. Allen, 8 Johns. (N. Y.) 390.'

"This court has also decided that the failure of the bank to so apply the deposit discharges the surety. In the case of White v. Life Association, etc., 63 Ala. [419] 430, 35 Am. Rep. 45, it is said: 'In McDowell v. Bank, 1 Har. (Del.) 369, the creditor, a bank, had on general deposit moneys of the principal, sufficient to pay the debt, but permitted the principal, from time to time, after maturity of the debt, to withdraw them by checks, and the surety was held discharged.' " Winfield Bank & Trust Co. v. Roberts, 200 Ala. 313, 314, 76 So. 79.

The question then for consideration and decision is what the bank should do in the premises as to protecting the other creditors of the bank in clearing Smith's stock from the statutory lien (sections 6338, 7000, Code; People's Bank v. Mobile Towing & Wrecking Co., 210 Ala. 678, 99 So. 87; Wynn, as Administrator, v. Tallapoosa County Bank, 168 Ala. 469, 53 So. 228), and in clearing the general funds of Smith on deposit.

█ We have indicated that the lien existed under the common law, and was not required under the statute of nonclaims to be presented for its preservation against the moneys or securities in the hands of the debtor bank. The liability as a lien accrued under the law (had there not been express contract of guaranty), and was effective as against Smith's general deposit. The law made the lien available as a set-off and discharge of Smith's liability for the balance of the money due and guaranteed on Lindsey's note.

The note stipulated: "And the maker, endorser, surety or guarantor of this note severally waives demand, presentment, protest, notice of protest, suit and all other requirements necessary to hold them, and they agree that time of payment may be extended without notice to them of such extension. The bank at which this note is payable is hereby authorized to apply, on or after maturity or whenever he deems himself insecure, to the payment of this note or notes, any funds in said bank belonging to the maker, surety, endorser, guarantor or any one of them."

█ It was the duty of the bank to enforce its lien and charge as it did the amount due against Smith's general deposit in that institution. The fact that Smith's administrator and cashier of the bank gave the transaction the form of a check available as a voucher did not render the transaction illegal or none the less the enforcement of the bank's lien, or subject the transaction to the influence of the statute of nonclaim. No claim was sought against the general estate of the debtor. The cases are agreed that to preserve a debt as a charge against an intestate's general estate the presentation of the claim as required is necessary; not so to preserve a lien existing upon intestate's property. Arbo v. State Bank of Elberta, 226 Ala. 52, 145 So. 318. There was error in charging the administrator with the sum paid on the Lindsey note and interest.

We find that no error is shown in the decree as to the item of $1,000, admitted by the administrator to be in his hands at the date of his resignation; so also appellant has not shown that there was error in charging the administrator with the item of $42.15. The several items of distribution, four checks of $100.50 each, aggregating $402, drawn on the First National Bank of Crossville, duly issued and sent to the several distributees, not returned and paid before the moratorium and restriction of payment, are claims in the hands of such distributees against the personal representative.

In the several respects indicated the decree of the probate court is reversed. As to the $1,000 item in the hands of the administrator at the time of his resignation, the item of $402, and that for $42.15, the decree is affirmed. Appellee will pay the costs of appeal in this court.

Affirmed in part, and in part reversed and remanded.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.