**Gerald W. ATKINSON, Plaintiff,**

**Susan A. Atkinson, Plaintiff-Appellant,**

**v.**

**FEDERAL DEPOSIT INSURANCE CORPORATION, etc. et al., Defendants–Appellees.**

**No. 79–1531.**

United States Court of Appeals, Fifth Circuit.

Jan. 30, 1981.

Rehearing Denied April 9, 1981.
See 642 F.2d 145.

---

Richard A. Lawrence, Montgomery, Ala., for plaintiff-appellant.

Smith, Bowman, Thagard, Crook & Culpepper, Charles M. Crook, Montgomery, Ala., for defendants–appellees.

Before VANCE, HENDERSON and THOMAS A. CLARK, Circuit Judges.

THOMAS A. CLARK, Circuit Judge:

This diversity case presents the question whether Alabama law permits a commercial bank to set off the unpaid indebtedness of a husband against a certificate of deposit jointly held by the husband and his wife. The district court ruled that Alabama law does permit a bank to set off against joint accounts in such circumstances. We reverse.

On September 15, 1975, Gerald W. Atkinson[1] borrowed $33,000 from the First National Bank of Macon County, Notasulga, Alabama ("Macon Bank"). The loan was an unsecured installment loan with Gerald Atkinson as the sole obligor. In August, 1976, Gerald and his wife, Susan, opened a savings account at the Macon Bank in the name of "Mr. or Mrs. G. W. Atkinson." On February 22, 1977, Susan Atkinson drew a check on the Atkinsons' joint checking

---

[1] Gerald W. Atkinson was one of the two plaintiffs below. His wife, Susan Atkinson, the other plaintiff below, is the sole appellant in this action.

account in the Chilton County [Alabama] Bank in the amount of $17,000, payable to "First Bk. Macon Co." The same day, the Macon Bank issued a four–year certificate of deposit in the amount of $10,000, payable to "Gerald W. or Susan A. Atkinson." The passbook to the Atkinsons' savings account revealed that a $6,500 deposit was posted to the account the next day, February 23, 1977.

On January 26, 1978, the First National Bank of Macon County was closed by the Alabama State Superintendent of Banks and, pursuant to Ala.Code § 5–8–3 (1975), the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver of the bank. By an order dated January 28, 1978, the Circuit Court of Macon County, Alabama, approved a "Purchase and Assumption Agreement" between the FDIC as receiver and the First Alabama Bank of Notasulga, N. A. ("First Alabama"), which resulted in the transfer of most of Macon Bank's assets and liabilities from the FDIC as receiver to First Alabama.

Under the terms of the Agreement, however, the FDIC, in its corporate capacity, purchased some of the failed bank's assets, including Gerald Atkinson's installment note. Thus, First Alabama assumed the Atkinsons' certificate of deposit and savings account while the FDIC held Gerald Atkinson's loan. The Agreement also provided that:

> if it is determined subsequent to the date hereof that all or any portion of the deposit liabilities assumed by [First Alabama] constitute funds of a party obligated on a loan which shall have been transferred to the Corporation [FDIC] by the Receiver [FDIC] and such loan has been classified as loss or doubtful or is past due, [First Alabama] shall pay to the Corporation, upon its demand, all or any part of such funds then on deposit and [First Alabama] shall be discharged from further liability to such depositor and shall be indemnified and held harmless by the Corporation to the extent of the payment so made to the Corporation.

Shortly after the sale of the Macon Bank, Susan Atkinson contacted the FDIC on February 10, 1978, requesting the release to her of the $10,000 certificate of deposit. The FDIC responded that it would not release the certificate of deposit to Mrs. Atkinson because it appeared to the FDIC that her husband was past due in his payments on the installment note. Mr. Atkinson and a bank liquidator for the FDIC discussed the matter of the past due, unsecured loan for several months after which time the FDIC, on June 8, 1978, made "FINAL AND FORMAL DEMAND" for the remaining unpaid balance on the loan. Upon Gerald Atkinson's failure to pay, the FDIC declared the note in default, ordered First Alabama to transfer the Atkinsons' certificate of deposit and savings account to the FDIC, and proceeded to set off against the $10,000 certificate of deposit and the $131.77 remaining balance in the savings account.

The Atkinsons filed this action against the FDIC, the First Bank of Macon County, and the First Alabama Bank of Notasulga, alleging breach of contract and conversion. The district court granted summary judgment for the FDIC and the two banks on all claims and for the FDIC on its counterclaim for $9,059.07 against Gerald Atkinson for the remaining unpaid balance on the installment note. Contending that the FDIC could not set off against the $10,000 certificate of deposit because she was the sole owner of the funds, Susan Atkinson appeals from the district court's grant of summary judgment in favor of the FDIC.

"[T]he right of a bank to a lien against money deposited with it and the right to set off a deposit against the depositor's indebtedness to the bank are part of the law merchant." *Kaufman v. First National Bank of Opp, Alabama*, 493 F.2d 1070, 1071 (5th Cir. 1974). Generally, "in the absence of an agreement to the contrary, a deposit, not made specifically applicable to some other purpose, may be applied by the bank in payment of the indebtedness of the depositor." *United States v. Butterworth–Judson Corporation*, 267 U.S. 387, 394, 45 S.Ct. 338, 340, 69 L.Ed. 672 (1925).

Alabama recognizes the right of setoff. *See King v. Porter*, 230 Ala. 112, 160 So. 101

(1935). However, the right of a bank to set off

> exists only where with respect to both debt and deposit the bank and the depositor are in debtor–creditor relationship, and there must be mutuality of demands.... The debts must be between the same parties and in the same "right" or capacity, so that, for example, the bank (having notice of the character of the deposit) cannot set off against a depositor's individual debt a deposit made by him in his capacity as a public officer or as executor or administrator.

*Kaufman, supra,* at 1072 (citations omitted). In this case the FDIC set off against the Atkinsons' joint certificate of deposit and their standard passbook savings account.

A certificate of deposit has been defined as:

> a written acknowledgment by a bank of the receipt of a sum of money on deposit which it promises to pay to the depositor, to his order, or to some other person or to his order, whereby the relation of debtor and creditor between the bank and the depositor is created.

5B Michie, Banks & Banking, § 313, p. 235 (footnotes omitted). A certificate of deposit amounts to a depositor's loan to the bank for "an agreed period of time at a stated rate of interest." *Id.* at 235 (footnote omitted). Furthermore, a certificate of deposit "creates the relationship of a 'general deposit'." *Id.* Thus, "[t]he basic principles which govern other types of bank deposits are applicable to certificates of deposit." *Id.* In addition, the rules which relate to the ownership of joint bank deposits are generally applicable to those bank deposits for which a joint certificate of deposit is issued. *Id.,* § 318, p. 245.

On appeal, Susan Atkinson challenges the ruling of the district court that as a matter of law the $10,000 joint certificate of deposit was available for setoff by the FDIC regardless of who actually deposited or owned the funds.

■ We agree with the parties that Alabama law controls the disposition of this case. The bank deposits in dispute here were held by Alabama banks. Furthermore, as a receiver of an Alabama state bank, the FDIC is charged with "all the rights, powers and privileges granted by State law to a receiver of a State bank." 12 U.S.C. § 1821(e). *See* Ala.Code § 5–8–3 (1975). What is in dispute is whether Alabama law permits a bank, or its receiver, to set off against a joint bank deposit under the circumstances presented here.

The possibility of certifying this issue to the Alabama Supreme Court pursuant to the Alabama certification provisions [2] was raised on appeal. Although the Alabama courts have not addressed this specific issue, we think that there is adequate, relevant Alabama authority to guide us in reaching a principled decision in this case. Therefore, we find it unnecessary to avail ourselves of the able assistance of the Alabama Supreme Court in resolving this appeal.

■ It is a well settled rule of banking law that in order for a setoff to be valid, the cross-demands between the bank and the depositor or depositors must be "mutual." *King v. Porter,* 230 Ala. 112, 160 So. 101 (1935); *First National Bank of Abbeville v. Capps,* 208 Ala. 207, 94 So. 109 (1922); *see* 68 A.L.R.3d 192. Those mutual demands must be "due from one party to the other in the same right." *First National Bank of Abbeville v. Capps,* 94 So. at 110. In other words, for the bank to set off a deposit against the unpaid balance of a loan (cross-demands), those competing claims must exist mutually between the same parties.

In *Capps* the court addressed the question of whether a bank which was holding an unpaid note of a partnership may set off the partnership's debt against the personal bank account of an individual who was a member of the partnership. The Supreme Court of Alabama held that in light of the absence of any statutory provision govern-

---

**2.** Ala.Const. Art. 6, § 140(b)(3).

ing the right of setoff in such circumstances, the bank had no right of setoff because the partner's demand against the bank in the form of the bank deposit and the bank's demand against the partnership for the unpaid debt lacked mutuality. Thus, in evaluating the validity of the FDIC's setoff against the Atkinsons' joint deposit, the issue to be resolved is whether the mutuality element was present.

The note which the FDIC acquired as part of the liquidation of the Macon Bank obligated "Gerald W. Atkinson" *only* to repay $33,000 plus interest in 60 monthly installments beginning October 25, 1975. The certificate of deposit was issued to "Gerald W. or Susan A. Atkinson." This deposit was joint without right of survivorship. Thus, can the mutuality element exist when only one of the joint depositors is indebted to the bank?

We think not. We reach this conclusion after careful consideration of the drastic nature of the self–help remedy of setoff. The certificate of deposit at issue here did not specify the separate interests of the co–depositors or authorize the bank to apply the deposit to the debt of only one of the co–depositors. Therefore, in the absence of mutuality, the FDIC was not entitled to a setoff of the husband's debt against the joint deposit. Just as any other unpaid creditor, the FDIC is not prevented from proceeding against the joint certificate of deposit. Our holding is meant to prevent a bank, or its receiver, from summarily seizing a jointly held asset which may very well be owned in whole or in part by the co–depositor who is not indebted to the bank.

For these reasons, the judgment as to appellant Susan Atkinson is reversed, and the case is remanded to the district court with directions that the judgment be modified in accordance with this opinion.

REVERSED and REMANDED with instructions.