In the Matter of Jerry Franklin HER-
REN, fdba Woodgrove, Inc. and M
& J Construction, Debtor.

BIRMINGHAM TRUST NATIONAL
BANK, Plaintiff,

v.

Jerry Franklin HERREN fdba
Woodgrove, Inc. and M & J
Construction, Defendant.

Bankruptcy No. 80–01381.
AP. No. 80–0897.

United States Bankruptcy Court,
N. D. Alabama,
Southern Division.

April 7, 1981.

James J. Robinson, Romaine S. Scott, III, Birmingham, Ala., for Birmingham Trust Nat. Bank.

Roger W. Lee, Birmingham, Ala., for debtor.

Ralph E. Coleman, Birmingham, Ala., for intervenor.

A. Jerry Beck, Trustee, Birmingham, Ala.

Jack Rivers, U. S. Trustee, Birmingham, Ala.

Jerry F. Herren, pro se, debtor.

## FINDINGS OF FACT AND OPINION

STEPHEN B. COLEMAN, Bankruptcy Judge.

This cause came on to be heard on the complaint for relief from the automatic stay of Section 362 of the Bankruptcy Code filed by Birmingham Trust National Bank ("BTNB") represented by James J. Robinson and Romaine S. Scott, III of Thomas, Taliaferro, Forman, Burr & Murray, 1600 Bank For Savings Building, Birmingham, Alabama 35203; and on the appearance of above counsel as well as Roger W. Lee, 1734 Oxmoor Road, Birmingham, Alabama 35209, attorney for the Debtor; and Ralph E. Coleman, 2175 11th Court South, Birmingham, Alabama 35205, attorney for Intervenor, and

The Court having heard and considered all the testimony submitted at the trial on November 25, 1980, and having considered the pleadings of the parties, the briefs, and argument of counsel, the Court finds:

## FINDINGS OF FACT

A Certificate of Deposit was issued by BTNB to Mr. and Mrs. Jerry F. Herren on August 7, 1975. The Certificate is payable in the alternative to Mr. and Mrs. Jerry F. Herren. On December 17, 1975, Jerry F. Herren (the "Debtor") signed a guaranty with BTNB whereby he personally guaranteed the payment of any and all debts owing to BTNB by Herren Construction Company, Inc. This guaranty was signed by Mr. Herren only and was for the debts of his company and not for any family debt that he and his wife had.

On January 30, 1978, the Debtor made a promissory note payable to the order of BTNB in the original principal amount of $5,000. Under the provisions of the promissory note, the Debtor pledged and delivered the Certificate of Deposit to BTNB.

Under the terms of this note and security agreement, it was expressly stated that the Certificate of Deposit was given "to secure the payment when due of the indebtedness evidenced hereby and the performance of the Borrower's covenants hereunder and all other and future indebtedness of Borrower to Holder." Testimony revealed that this money was used by Mr. Herren to purchase a boat for his and Mrs. Herren's enjoyment. Mr. Herren testified that she knew the Certificate had been pledged to BTNB and that she had never had possession of the Certificate of Deposit.

On November 13, 1979, the Debtor and Mrs. Herren were divorced in the Circuit Court of Jefferson County, Alabama, and by virtue of said divorce decree, the Certificate of Deposit was conveyed to Mrs. Herren. The decree read in part:

> Plaintiff and defendant purchased during their marriage a Certificate of Deposit evidenced by Certificate No. 0000139407, said Certificate of Deposit shall become the sole and exclusive property of Plaintiff. (Mrs. Herren)."

BTNB has never relinquished control or possession of the Certificate of Deposit and was never called upon to do so until this proceeding.

On March 12, 1980, the Debtor filed his petition in Bankruptcy. He was discharged on August 6, 1980. On October 31, 1980, BTNB filed its complaint asking this Court to set-off that interest Mr. Herren held in the Certificate of Deposit against the indebtedness owing by Mr. Herren to BTNB. The Bank had been sending interest checks to Mrs. Herren payable on the Certificate of

Deposit on the 10th of each month. The last check received was in June of 1980.

## ISSUES PRESENTED

1. Whether a husband may pledge a Certificate of Deposit jointly owned between himself and his wife to a bank to secure his personal debts.

2. Whether a bank may set-off such Certificate of Deposit after a divorce decree has awarded said Certificate to the wife and when the former husband declares bankruptcy.

This case is properly before the Court pursuant to Title 28 U.S.C. § 1471(b) and (c), which gives the District Court and Bankruptcy Courts original jurisdiction of all civil proceedings arising under Title 11 or arising in or related to cases under Title 11 which comprises the new Bankruptcy Code. Section 1471(e) also gives the Bankruptcy Court exclusive jurisdiction of all the property, wherever located, of the Debtor, as of the commencement of his case.

■ The rights in the Certificate of Deposit are properly determined in this form as the Certificate was pledged by the Debtor to the Bank for a loan and now the Debtor has bankrupted against this loan and others.

Mrs. Herren the intervenor, contends that the Bank has no right to set-off the Certificate of Deposit since the debts claimed by the Bank were those of her ex-husband and that the basic element of set-off, that of mutuality, is lacking. BTNB contends that it had a perfected, first priority security interest in the Certificate of Deposit and should be allowed to set-off the full amount of the Certificate and apply it to Mr. Herren's indebtedness.

Whether the Bank has the right to set-off or not is the main question presented in this case. If it doesn't, is there any other remedy available for it to recoup its loss?

Set-off by a bank ordinarily occurs when the bank off-sets indebtedness owed it by a Debtor on a promissory note against indebtedness it owes the Debtor in the form of funds held in the Debtor's bank account.

Ahart, "Bank Setoff Under the Bankruptcy Reform Act of 1978," *American Bankruptcy Law Journal*, Vol. 53, p. 226 (1980).

Here, Mr. Herren, the Debtor, pledged the joint Certificate of Deposit to BTNB to secure $5,000 he borrowed to purchase a motor boat for himself and his wife. Mr. Herren has bankrupted against this debt and the Bank seeks to recover its loss through its right of set-off on the Certificate of Deposit. Set-off is not an unrestricted right, however, statutes and judicial decisions, both State and Federal, place various limitations on its use. Ahart, *supra*, at page 229.

The pertinent Federal law, The Bankruptcy Code, Section 553(a) provides in part that:

"... this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case ..."

It is apparent that the only restriction the Bankruptcy Code has on the right of set-off is that of mutuality. There is no statutory definition of mutuality, therefore, we must look to case law. While Alabama recognizes the right of set-off, *King v. Porter*, 230 Ala. 112, 160 So. 101 (1935), and defines the elements of mutuality, *First National Bank of Abbeville v. Capps*, 208 Ala. 207, 94 So. 109 (1922), the controlling case on the question of mutuality involving a joint Certificate of Deposit is the recent Fifth Circuit Court of Appeals case of *Atkinson v. F. D. I. C.*, 635 F.2d 508 (5th Cir. 1981). This case presented substantially the same question.

The Fifth Circuit Court concluded that when the deposit was joint without right of survivorship and the Certificate did not specify the separate interests of the co-depositors or authorize the Bank to apply the deposit to the debt of only one of the co-depositors, there was no element of mutuality present and therefore the creditor was not

entitled to a set-off of the husband's debt against the joint deposit.

It is very apparent that the debts in the case before the bar were not mutual even though Mrs. Herren knew about the loan and benefited from its use. However, the distinguishing point is that in the case before this Court, the Certificate of Deposit was *pledged* to the Bank. The loan in the *Atkinson* case was *unsecured*.

This is the central fact that the Bank is relying on. Mr. Herren, the Debtor, pledged the Certificate to the Bank as collateral for a loan to buy a motor boat and this created a perfected security interest as provided in the Alabama Uniform Commercial Code.

This brings us to the question of whether Mr. Herren could lawfully pledge a jointly held Certificate of Deposit for his own debts.

▆▆ The Fifth Circuit quoted 5 B Michie, Banks & Banking, § 313 defining a Certificate of Deposit as "a written acknowledgement by a bank of the receipt of a sum of money on deposit which it promises to pay the depositor, to his order, or to some other person on his order, whereby the relation of debtor and creditor between the bank and the depositor is created." *Atkinson, supra*, at page 511. This definition is substantially the same as the definition of a Certificate of Deposit in the Alabama Uniform Commercial Code found in the 1975 Code of Alabama, § 7–3–104(2)(c). Does the Alabama Uniform Commercial Code control the disposition of this Certificate of Deposit? This Court believes that it does. Courts have long recognized that Certificates of Deposit were "instruments" under Article 9, and that interests in them were governed by the Uniform Commercial Code. See *Southview Corp. v. Kleberg First National Bank*, 512 S.W.2d 817 (Tex.Civ.App. 1974), *Howick v. Bank of Salt Lake*, 28 Utah 2d 64, 498 P.2d 352 (1972); 1 Secured Transactions, *Bender's U. C. C. Service*, § 5 A. 15(1). While Article 9 of the Uniform Commercial Code excludes transfers of deposits, savings, etc.; it specifically includes a pledge of collateral. § 7–9–102(2) 1975

Ala.Code. A pledge is a *transfer* of personal property as a security for a debt or other obligation, a bailment of personal property by the Debtor to his creditor to be kept until the debt is discharged; the essential *elements* being that the *possession* of the pledged property passes *from the debtor* to the creditor, that the legal title remains in the debtor and that the creditor has a *lien* for the payment of the debt due him by the debtor *or some other person*. *Rolfe v. Huntsville Lumber Co.*, 8 Ala.App. 487, 62 So. 537 (1913).

Did Mr. Herren's actions in assigning the Certificate of Deposit to BTNB fulfill the elements of a pledge? Again, we must turn to the Uniform Commercial Code enacted in Alabama. § 7–3–116 states in part that "An instrument payable to the order of two or more persons: (a) If in the alternative is payable to any one of them and may be negotiated, discharged or enforced by any of them who has possession of it." The Certificate of Deposit was made payable to Mr. *or* Mrs. Jerry F. Herren which is in the alternative. Under this Section Mr. Herren could negotiate, discharge or enforce the Certificate since he had possession of it. Mrs. Herren testified that she *never* had possession of it.

▆▆ Under the provisions of the promissory note dated January 30, 1978, Mr. Herren assigned the Certificate to the Bank. Under § 8–5–20 of the Code, all bonds, writings and contracts for the payment of money, or other thing, or the performance of any act or duty, are assignable by endorsement so as to authorize an action thereon by each successive endorsee. A Certificate of Deposit comes within the meaning of this Section. *Hicks v. Meadows*, 193 Ala. 246, 69 So. 432 (1915). Also § 7–9–203 provides in part that "... a security interest is not enforceable against the debtor or *third parties* unless: (a) the collateral is in the possession of the secured party ..."

▆▆ The Certificate appears to be validly endorsed over and assigned to the Bank as a pledge and this security appears to be

valid against the former wife as a third party. While she did not endorse the Certificate, she knew of the assignment, apparently consented to it, and benefitted from it by her husband's purchase of a motor boat. Under these circumstances, it appears that the Bank does have a right to foreclose its lien on the Certificate and accomplish this through a set-off procedure. The divorce and awarding of the Certificate to Mrs. Herren does not affect the possession and thus the perfection of the pledge by the Bank.

A separate Order will be entered in consonance with this finding and opinion.