THOMPSON, Judge.
This is the second appeal involving this matter. In considering the first appeal, this court set forth the procedural history and facts of the case as follows:
“Richard Winecoff and Sandy Wine-coff sued Compass Bank. Compass Bank answered and counterclaimed. Compass Bank moved for a summary judgment on the Winecoffs’ claims against it. The Winecoffs opposed that motion. On June 20, 2002, the trial court entered a summary judgment on the Winecoffs’ claims. In its June 20, 2002, order, the trial court noted that Compass Bank’s counterclaim against the Winecoffs was still pending, and it purported to certify, pursuant to Rule 54(b), Ala. R. Civ. P., the order as final. The Winecoffs appealed.
“The record indicates that the Wine-coffs had a joint checking account at Compass Bank. On May 1, 2001, Sandy Winecoff redeemed two United States Savings Bonds at Compass Bank. Compass Bank later determined that it had paid Sandy Winecoff $2,425.60 in excess of the amount actually due on those savings bonds. Therefore, Compass Bank ‘set off,’ or deducted, $1,272.59 from the Winecoffs’ joint checking account as a partial repayment of the amount it had allegedly overpaid. Compass Bank contended that the terms of the account agreement between it and the Winecoffs allowed it to effect that setoff. The Winecoffs argued that the setoff was not authorized by the account agreement or by applicable caselaw. The Winecoffs claimed that the allegedly improper setoff caused checks written on their joint checking account, which they believed had funds sufficient to cover those checks, to be returned to Compass Bank for insufficient funds.
“In their complaint against Compass Bank, the Winecoffs alleged conversion, breach of contract, breach of fiduciary duty, defamation, suppression, negligence and wantonness, wrongful seizure of funds, and the tort of outrage. The Winecoffs’ claims were based on their allegation that they had been injured by Compass Bank’s allegedly improper set-off of the $1,272.59 from their joint checking account. In its counterclaim, Compass Bank sought to recover the remaining $1,153.01 it claimed it had *1147 overpaid Sandy Winecoff when she redeemed the savings bonds.
“In its motion for a summary judgment on the Winecoffs’ claims, Compass Bank argued only that it had the authority, under both its agreement with the Winecoffs and applicable caselaw, to set off the Winecoffs’ joint account for the amount it claimed it had overpaid with regard to the savings bonds. The Wine-coffs opposed that motion, arguing a lack of mutuality in their joint-checking-account agreement with Compass Bank.”
Winecoff v. Compass Bank, 854 So.2d 611, 612-13 (Ala.Civ.App.2003) (“Winecoff I”).
In Winecoff I, this court held that the trial court’s certification of its June 20, 2002, summary-judgment order as final pursuant to Rule 54(b), Ala. R. Civ. P., was not effective. This court based its holding on its conclusion that the Winecoffs’ claims and Compass Bank’s counterclaim were so intertwined as to make a Rule 54(b) certification inappropriate because of the risk of inconsistent results. Winecoff I, 854 So.2d at 614 (citing Branch v. SouthTrust Bank of Dothan, N.A., 514 So.2d 1373 (Ala.1987), and Clarke-Mobile Counties Gas Dist. v. Prior Energy Corp., 834 So.2d 88 (Ala.2002)). Therefore, this court dismissed the appeal as taken from a nonfinal judgment. Winecoff I, 854 So.2d at 614.
On January 17, 2003, after this court’s dismissal of the appeal in Winecoff I, Compass Bank moved the trial court for a summary judgment on its counterclaim against the Winecoffs. The Winecoffs did not oppose the January 17, 2003, motion for a summary judgment. On March 11, 2003, the trial court entered a summary judgment in favor of Compass Bank on its counterclaim against the Winecoffs. In the March 11, 2003, judgment, the trial court also noted that because it had previously entered a partial summary judgment in favor of Compass Bank on the Wine-coffs’ claims, the judgment disposed of all pending claims between the parties, and, therefore, it constituted a final judgment. The Winecoffs appeal, arguing only that the trial court erred in entering a summary judgment in favor of Compass Bank on their claims against Compass Bank; the Winecoffs make no argument pertaining to the summary judgment entered in favor of Compass Bank on its counterclaim against them.
A motion for a summary judgment is properly granted where no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. In reviewing a summary judgment, this court applies the same standard as the trial court. All evidence must be viewed in a light most favorable to the nonmoving party, and all reasonable doubts concerning the existence of a genuine issue of material fact must be resolved in favor of the non-movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990). After the moving party makes its prima facie showing, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala.1989). The nonmoving party is required to present “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
In considering the current appeal, this court, ex mero motu, incorporated the record from the appeal in Winecoff I. In addition to the facts and history discussed above, the record also indicates the following relevant facts. The Winecoffs opened a “multiple-party account with right of sur- *1148 worship” at Compass Bank. Both of the Winecoffs signed the account agreement, which, among other things, indicated their acknowledgment that they had received a copy of the “Disclosure for Deposit Accounts” (“the disclosure document”). Among other things, the disclosure document contains a provision stating:
“10. Setoff
“You acknowledge that, except as otherwise prohibited by law, we have the right to set off against your account any indebtedness or other obligations which you owe us, at any time, without any further notice to or demand on you, whether the indebtedness or other obligations are now existing or hereafter arise. The indebtedness includes, without limitation, all charges and overdrafts incurred on any account you hold with us. You agree that we may set off against the account any claim which we have against you without regard to the source or ownership of the funds on deposit in the account and without [the] requirement that the claim be owed to us by all of the account owners rather than only some of them."
(Emphasis added.)
The Winecoffs have not contended that Compass Bank was not due a setoff because it paid Sandy Winecoff the correct amount for the savings bonds. Additionally, the Winecoffs have not challenged the trial court’s determination that Compass Bank was entitled to recover on its claim seeking payment for that part of the amount it overpaid Sandy Winecoff that was not offset against the Winecoffs’ bank account. The Winecoffs have also not disputed the amount of damages awarded by the trial court, which equaled the amount of the overpayment that was not recovered from the Winecoffs’ bank account.
We interpret the Winecoffs’ arguments on appeal to be that the setoff provision was unconscionable[1] and that Compass Bank could not validly deduct the overpayment from their account because of an alleged lack of mutuality of obligation between the parties.
As to the argument that the setoff provision contained in the disclosure document was unconscionable, we note that our supreme court has affirmed a summary judgment in favor of a bank on a plaintiffs claim that the bank’s assessment of a $15 service charge on checks returned for insufficient funds was unconscionable. Sanders v. Colonial Bank of Alabama, 551 So.2d 1045 (Ala.1989). In so holding, our supreme court cited with approval a number of cases holding that the doctrine of unconscionability is available only as a defense and not as a method of obtaining affirmative relief. See Sanders, 551 So.2d at 1045-46.
Sanders and the cases cited therein, however, “concerned the application of the Uniform Commercial Code unconscion-ability provision, adopted in Alabama as Ala.Code 1975, § 7-2-302.” Williams v. E.F. Hutton Mortgage Corp., 555 So.2d 158, 161 (Ala.1989). This case involves a *1149 consumer-finance transaction that falls under Title 5 of the Alabama Code, which governs banks and financial institutions. Section 5-19-16, Ala.Code 1975, a part of the article in Title 5 that governs consumer-finance transactions, applies to the facts of this case. As our supreme court has stated, § 5-19-16 provides a statutory defense of unconscionability in certain contract actions. AmSouth Bank v. Dees, 847 So.2d 923 (Ala.2002).
In Williams v. E.F. Hutton Mortgage Corp., supra, our supreme court cited Sanders with approval in holding that the doctrine of unconscionability did not provide affirmative relief under the language of § 5-19-16. In so holding, the court stated:
“The operative language in [§ 7-2-302, which the holding in Sanders v. Colonial Bank of Alabama, 551 So.2d 1045 (Ala.1989), addressed] is almost identical to the operative language in § 5-19-16. Both of those sections allow the court to refuse to enforce an agreement, to enforce the agreement without the unconscionable provision, or to modify the provision to avoid an unconscionable result. Each of those remedies obviously contemplates a continuing agreement or an attempt to enforce the agreement. One treatise on the U.C.C. recites the background of those provisions as follows: ‘When the equity courts found contracts to be unconscionable, they refused specific enforcement, or granted rescission. Affirmative recovery in damages was not given. The remedial tools available to a modern court under section 2-302 are of a similarly equitable nature.’ 1 J. White & R. Summers, Uniform Commercial Code § 4-8 (3d ed.1988) (footnotes omitted).”
Williams v. E.F. Hutton Mortgage Corp., 555 So.2d at 161-62. Based on the above-quoted analysis, the court concluded that § 5-19-16 did not provide a cause of action providing affirmative relief to a plaintiff. Williams v. E.F. Hutton Mortgage Corp., 555 So.2d at 162.
In this case, the Wineeoffs attempted to obtain affirmative relief, specifically, an award of damages, based on their claim that the setoff provision of the disclosure agreement was unconscionable. The precedent of Williams v. E.F. Hutton Mortgage Corp., supra, does not allow parties to use the theory of unconscionability as a basis for seeking affirmative relief. Given the foregoing, we cannot say that the Wi-necoffs have demonstrated that the trial court erred, based on the theory of the unconscionability of the setoff provision contained in the disclosure document, in entering a summary judgment in favor of Compass Bank on their claims against Compass Bank.
The Wineeoffs also argue that the trial court erred in entering a summary judgment in favor of Compass Bank on their claims because, they maintain, there was no mutuality of obligation between the parties. The Winecoffs maintain that, in the absence of the element of mutuality, Compass Bank had no authority to set off their account by the amount of the overpayment on the savings bonds. The Winecoffs cite Atkinson v. Federal Deposit Ins. Corp., 635 F.2d 508, 511 (5th Cir.1981), as authority for the proposition that generally, “in order for a setoff to be valid, the cross-demands between the bank and the depositor or depositors must be ‘mutual.’ ” Other cases have expressed the same proposition by stating that in order for the element of mutuality to be present to entitle a party to a setoff, “the cross-demands must be mutual; that is, due from one party to another in the same right.” King v. Porter, 230 Ala. 112, 116, 160 So. 101, 104 (1935); First Nat’l Bank of Abbeville v. Capps, 208 Ala. 207, 94 So. 109 (1922). *1150 See also 10 Am.Jur.2d Banks and Financial Institutions § 865 (1997). For example, in First National Bank of Abbeville v. Capps, supra, our supreme court explained that a setoff of an individual partner’s indebtedness is not allowed against the account of the partnership because of a lack of mutuality.
Thus, it appears that the Winecoffs argue that there is a lack of mutuality in the present case because the amount owed by Sandy Winecoff was offset against the joint account owned by both Sandy Wine-coff and Richard Winecoff. They assert the amount owed to Compass Bank for its overpayment on the savings bonds is a debt owed solely by Sandy Winecoff and that the overpayment may not be properly offset against an account held in the names of both of the Winecoffs. We note that Compass Bank does not allege that its overpayment on the savings bonds was a joint debt owed by both of the Winecoffs. Further, it is unclear from the record the name or names in which the savings bonds at issue were held;[2] however, it is clear that Sandy Winecoff, but not Richard Wi-necoff, cashed those bonds.
In Atkinson v. Federal Deposit Insurance Corp., supra, a bank sought to offset indebtedness owed to it by a husband against the funds represented by a certificate of deposit held jointly by the husband and his wife. The trial court allowed the setoff, but the Fifth Circuit Court of Appeals reversed. In reversing, the court noted that only one of the codepositors of the certificate of deposit owed the bank certain sums, and that the “certificate of deposit ... did not specify the separate interests of the co-depositors or authorize the bank to apply the deposit to the debt of only one of the co-depositors.” Atkinson, 635 F.2d at 512. The court concluded that the element of mutuality was lacking and that, therefore, the bank could not set off against the funds represented by the jointly held certificate of deposit the amounts the husband owed the bank. Id.
The facts of Atkinson are distinguishable from those of the case currently before this court. In Atkinson, the certificate of deposit did not contain any terms relating to the joint holders’ respective interests in the certificate of deposit, and it did not specify by its own terms whether the bank had the authority to offset the funds represented by the certificate of deposit against a debt owed by only one of the joint holders. In the present case, however, the disclosure document contains a setoff provision that provides that Compass Bank could offset its claims (e.g., the overpayment on the savings bond) against the Winecoffs’ bank account “without regard to the source or ownership of the funds on deposit in the account and without [the] requirement that the claims be owed to [Compass Bank] by all of the account owners rather than only some of them.”
In a case with facts similar to those of this case, our supreme court affirmed a summary judgment entered in favor of a bank on the plaintiffs’ claims relating to their contention that the bank had improperly offset funds from the plaintiffs’ joint bank account. Sullivan v. Central Bank of the South, 601 So.2d 985 (Ala.1992). In that case, the bank offset certain amounts from the joint checking and savings accounts of the plaintiffs, a husband and wife, after the husband refused to pay amounts owed on delinquent indebtedness held in the names of the husband and his ex-wife. The account agreements for the *1151 plaintiffs’ joint checking and savings accounts contained a setoff provision with language almost identical to that contained in the setoff provision in the present appeal. In affirming the summary judgment entered in favor of the bank on the plaintiffs’ claims, the court held that “the express terms of the [plaintiffs’] account agreements provided that any debt owed by any one of the account owners could be set off from the funds in the account to satisfy the debt.” Sullivan v. Central Bank of the South, 601 So.2d at 986.
Similarly, in this case, the setoff provision in the disclosure document for the Winecoffs’ bank account with Compass Bank provided that a debt owed Compass Bank by one of the Winecoffs could be offset against the account without the requirement that the debt be owed by both of the Winecoffs. In other words, the setoff provision contained in the disclosure document provides that the amount Sandy Winecoff owed Compass Bank could be set off against the Winecoffs’ joint account without regard to the element of mutuality. This court has already rejected the Winecoffs’ argument pertaining to the alleged unconscionability of the setoff provision. The Winecoffs have provided this court with no other argument as to why they should not be bound by the terms of the setoff provision contained in the disclosure document. Our supreme court has allowed a bank to offset a joint account for a debt incurred by only one of the cohold-ers of the joint account based on a contractual setoff provision similar to the one at issue in this case. Sullivan v. Bank of the South, supra. See also 10 Am. Jr.2d Banks and Financial Institutions § 867 (1997) (“A bank and its debtor-depositor may contract to allow setoff in certain instances in which it may otherwise be impermissible.” (Footnote omitted.)).
Given the foregoing authority and the arguments contained in the Winecoffs’ brief on appeal pertaining to the issue of mutuality, we cannot say that the Wine-coffs have demonstrated that the trial court erred in entering a summary judgment in favor of Compass Bank on their claims against Compass Bank.
AFFIRMED.
YATES, P.J., and CRAWLEY, PITTMAN, and MURDOCK, JJ„ concur.

. Although the Winecoffs’ complaint did not expressly contain a claim alleging the uncon-scionability of the setoff provision, the Wine-coffs opposed Compass Bank's motion for a summary judgment based, in part, on that theory. We again emphasize that Compass Bank's initial motion for a summary judgment was based only on its defense of the Winecoffs’ claims against it. Therefore, in arguing the theory of unconscionability, the Winecoffs were not asserting unconscionability as a defense to any claim or counterclaim Compass Bank had asserted against them, but were instead asserting unconscionability as a theory under which they sought affirmative relief. We also conclude that the theory of unconscionability was presented to the trial court under Rule 15(b), Ala. R. Civ. P., which allows issues to be tried by the implied consent of the parties.

. One of the savings bonds appears to have been in the name of "Gloria Inez Stockwell.” Sandy Winecoff testified that Inez Stockwell was her grandmother. A copy of the other savings bond is not contained in the record on appeal.