Daphne V. Rankin, formerly Daphne V. Waterman, and her ex-husband, Phillip M. Waterman, moved from Brookefield, Illinois, to Fairhope, Alabama, in May, 1977. The two were still married at the time.
On May 31, 1977, Ms. Rankin and her husband, Mr. Waterman, opened several bank accounts at the First National Bank of Fairhope (now First National Bank of Baldwin County). Ms. Rankin deposited a cashier's check in the amount of $41,423.02, which represented the proceeds of the sale of her home of a prior marriage. Ms. Rankin purchased a certificate of deposit with $30,000.00. The remainder of the money was deposited in a passbook savings account and a joint checking account. Ms. Rankin testified that she explained to the bank employee that the source of the funds for the certificate of deposit was the sale of her house in Illinois and that the funds were owned by her. She further explained to the employee that she wanted an account which required both her and her husband's signature to negotiate any transactions (an "and" account). Contrary to Ms. Rankin's instructions, the bank employee selected a joint account with right of survivorship signature card (an "or" account), which permitted either Ms. Rankin or her husband to withdraw money from the account without the other's signature.
Ms. Rankin testified that she thought the bank employee followed her instruction in drawing up the certificate of deposit. She signed signature cards for all three *Page 740 
accounts at the same time, and did not understand the legal significance of the use of the term "or" instead of "and." Thus, the account read "Daphne V. Waterman or Phillip M. Waterman."
Ms. Rankin learned two years later that the bank had loaned her husband money and had accepted the certificate of deposit as security for the loan. Ms. Rankin claims she had no knowledge of the loan. Ms. Rankin later asked the bank official to change the names on the account and advised the official that the money in the certificate of deposit was hers alone. She also presented the bank official with a copy of her divorce decree from Mr. Waterman, in which he admitted the funds were those of his wife.
On September 27, 1979, the bank notified Ms. Rankin of its intent to cash her certificate of deposit. On October 15, 1979, the bank cashed Ms. Rankin's certificate of deposit, and applied it to the unpaid balance of Mr. Waterman's loan.
Ms. Rankin instituted an action against the bank seeking $250,000.00 in compensatory and punitive damages. The complaint, as amended, contained six counts: two counts of conversion, one count based on the mistake of the bank and breach of its oral agreement, one count for breach of contract, a count for fraud and misrepresentation, and a sixth count for reformation. The action was tried before a jury. At the close of plaintiff's evidence, the trial court granted a motion for directed verdict in favor of the bank. Ms. Rankin appeals. We affirm.
The basic issue on appeal is whether Ms. Rankin presented a sufficient quantum of evidence to prevent the granting of a directed verdict. The resolution of this issue turns on whether Ms. Rankin may vary the terms of the written agreement between her and the bank.
The general rule in most jurisdictions is that a written agreement is conclusive of the relationship between a bank andits depositor. SA Michie, Banks and Banking § 46 (3rd ed. 1973). In an action between the parties whose names appear on ajoint account, the question of ownership of the funds is a matter of the intent of the parties. See id.; Harris v. Dial,398 So.2d 679 (Ala. 1981). The bank account in question was in the name of "Phillip M. or Daphne V. Waterman," and the account carried the right of survivorship. The legal effect of such an account is that either party may withdraw the funds without the other's signature. Ms. Rankin saw the signature card, had the opportunity to read it, and finally signed the card. Ms. Rankin alleges no misrepresentations made to her by the bank. Under these circumstances, the written agreement between the bank and Ms. Rankin conclusively governs their relationship. The bank did not wrongfully permit Ms. Rankin's former husband to give the joint certificate of deposit as security for a loan. Thus, the bank committed no legal wrong by cashing the certificate of deposit.
Ms. Rankin contends that the bank used its right of set-off in applying the certificate of deposit against the amount due on the defaulted loans. See Atkinson v. FDIC, 635 F.2d 508 (5th Cir. 1981). Ms. Rankin claims that there is not complete mutuality between obligors on the loan and holder of the certificate of deposit, and therefore, the bank improperly used the right of set-off. Id. Nevertheless, the bank did not exercise its right of set-off, but exercised its rights as a secured party under Alabama's version of Article 9 of the Uniform Commercial Code. A bank exercises the right of set-off when it satisfies a debt with the funds of the debtor deposited in the bank; this occurs in an unsecured transaction, and the depositor's funds are not given as collateral for the loan. Ms. Rankin does not contest the validity of the security agreement or the Bank's exercise of its Article 9 remedies for default.
The judgment of the court below based on a directed verdict against Ms. Rankin is affirmed.
AFFIRMED.
TORBERT, C.J., and ALMON, EMBRY and ADAMS, JJ., concur. *Page 741