**In re Julia Maxine DAWSON, Debtor.**

**J. William WHITE, Trustee, Plaintiff,**

**v.**

**Julia Maxine DAWSON, First Alabama Bank of Sumter County and Mattie D. Hall, Defendants.**

**Bankruptcy No. 83–4733.
Adv. No. 84–0133.**

United States Bankruptcy Court,
N.D. Alabama, W.D.

Dec. 14, 1984.

David A. Reid, Livingston, Ala., for debtor.

J. William White, Scottsboro, Ala., Trustee.

Robert P. Reynolds, Tuscaloosa, Ala., for First Alabama Bank of Sumter County.

Robert P. Upchurch, Livingston, Ala., for Mattie D. Hall.

## MEMORANDUM OPINION

GEORGE S. WRIGHT, Bankruptcy Judge.

This matter is before the Court on the motions of plaintiff, the Trustee for the bankruptcy estate of Julia Maxine Dawson, and defendants, First Alabama Bank of Sumter County (the Bank) and Mrs. Mattie D. Hall. The Trustee initiated this adversary proceeding by filing a complaint seeking the turnover of the proceeds of a certificate of deposit and a savings account which were held by the Bank pursuant to a pledge agreement and in which the debtor allegedly had an interest. The Bank contends that it properly exercised its rights as a secured party under Alabama's version of Article 9 of the Uniform Commercial Code[1] in applying a portion of the funds to the debt owed to it by Ms. Dawson. The Bank has interplead the remaining balance of the funds because Mattie D. Hall also claims entitlement to those funds.

Rule 56 of the Federal Rules of Civil Procedure is made applicable to adversary proceedings by Rule 7056 of the Bankruptcy Rules. *In re Independent Clearing House Co.*, 41 B.R. 985, 11 C.B.C.2d 196, 204 (Bktcy.D.Utah 1984). In determining whether to grant a motion for summary judgment, the Court must examine the pleadings and supporting affidavits to ascertain if a genuine issue of material fact exists. *Id.* If there is none, the Court must apply the law to the undisputed facts and render judgment. *Id.* The facts of this case are not in dispute, and the following shall constitute the findings of fact and conclusions of law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure. A separate order will be entered consistent with this opinion.

## FINDINGS OF FACT

On July 6, 1981 the debtor applied for a three thousand ($3,000) dollar loan with the Bank. Ms. Dawson met with Mr. Henry T. Walburn, vice president of the Bank, on that date to discuss the loan. Mr. Walburn informed the debtor that because of her poor credit history, the Bank would not loan her any funds unless the loan could be secured by a savings account or a certificate of deposit of an equal amount held by the Bank. Ms. Dawson then persuaded her aunt, Mattie D. Hall, to provide the funds necessary to secure the proposed loan. Also on July 6, 1981, Mrs. Hall transferred $3,000 from her savings account (# 260–942–8) to Ms. Dawson's savings account (# 084–515–6) and co-signed the note payable to the Bank. The affidavits of Mrs. Hall and Ms. Dawson clearly establish that Mrs. Hall never intended to make a gift of the $3,000 to Ms. Dawson but that the money was to be used solely for the purpose of securing the loan.

After Mrs. Hall discovered that the money had been placed in a savings account instead of in an account bearing a higher interest rate, she had the money withdrawn from Mrs. Dawson's savings account

---

1. Because this transaction was entered into before January 1, 1982, the "old U.C.C." is controlling. *See Ala. Code* Section 7–11–101 (1984 Supp.).

(# 084–515–6) and purchased a certificate of deposit (# 100702) in the joint names of "Julia M. Dawson or Mattie D. Hall and Yoland Dawson" on August 3, 1981. On this same date, Julia M. Dawson pledged this certificate of deposit to secure the note which was executed on July 6, 1981.

From March 4, 1982 to May 20, 1982, the Bank charged the certificate of deposit and withdrew funds to make the payments which Ms. Dawson had failed to meet. Because the interest penalties reduced the effective yield of the certificate of deposit, the Bank opened a new savings account (# 084–517–2) on May 25, 1982 in the names of "Julia M. Dawson or Mattie D. Hall". On March 28, 1983, the Bank made an involuntary withdrawal from this account to make a payment on the loan since Ms. Dawson had not done so.

Ms. Dawson filed her Chapter 7 petition on September 2, 1983. On this date, the balance in the joint account (# 084–517–2) was $2,319.28. In violation of the automatic stay of section 362 of the Code,[2] the Bank applied $245.22 and $1,145.85 on September 8, 1983 and December 2, 1983, respectively, to the balance due on the note. The last application of $1,145.85 completely paid off the note and left the joint savings account (# 084–517–2) with a balance of $958.28. This $958.28 has been accruing interest since December 2, 1983 at an annual rate of 5¼%.

## CONCLUSIONS OF LAW AND APPLICATION TO FACTS

■ Section 541 of the Bankruptcy Code provides in pertinent part:

**Section 541 Property of the Estate**

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. Section 541(a)(1) (1978). Whether an interest is property of the estate is a federal question to be decided by federal law; but in determining what interests in property the debtor has at the time of the filing of her bankruptcy petition, the Court must look to state law. *See Matter of Langley,* 30 B.R. 595, 598, 10 B.C.D. 784, 785–86 (Bktcy.Ind.1983); *In re Shore Air Conditioning & Refrigeration, Inc.,* 18 B.R. 643, 646, 8 B.C.D. 1062, 1064, 6 C.B. C.2d 360, 364 (Bktcy.N.J.1982).

Under Alabama law, in an action between the parties whose names appear on a joint account, the question of ownership of the funds is a matter of the intent of the parties. *Rankin v. First Nat'l Bank,* 416 So.2d 738, 740 (Ala.1982). This intention is to be determined at the time of the creation of the joint account. *Lovett v. Uptain,* 450 So.2d 113, 114 (Ala.1983); *Jones v. Jones,* 423 So.2d 205, 207 (Ala.1982). If the dispute is between a bank and its depositor, the written agreement is conclusive of the relationship of the parties. *Rankin,* 416 So.2d at 740. Because of this distinction and because the Bank claims entitlement to only a portion of the property sought in the Trustee's complaint, the Court will treat the property as two separate funds—the amount which was applied to the outstanding balance of the loan and the interplead funds.

### A. Funds Applied to the Loan

The Bank contends that it is entitled to the amount which it applied to the loan[3],

---

**2.** The record indicates that neither of these violations of the automatic stay were intentional. The involuntary withdrawal of September 8, 1983 was made out of ignorance of the debtor's Chapter 7 petition since the affidavit of Mr. Walburn, the vice president of the Bank shows that he thought September 13, 1983 was the date of Ms. Dawson's petition. Mr. Walburn also stated that the December 2, 1983 withdrawal was made under the mistaken impression that relief from the automatic stay had been granted with respect to Ms. Dawson's loan.

**3.** The Bank applied a total of $1,391.07 to the loan after the debtor filed her Chapter 7 petition. On September 8, 1983, the Bank applied

by virtue of its rights as a secured party under Alabama's version of Article 9 of the Uniform Commercial Code [4]. The first issue presented by the Bank's contention, is whether this transaction is within the scope of Article 9.

A transaction which is intended to create a security interest in an "instrument" is within the scope of Article 9 of Alabama's Uniform Commercial Code. *Ala. Code* Section 7–9–102(1)(a) (1975). Article 9 does not apply "[t]o a transfer in whole or in part of any ... deposit, savings, passbook or like account maintained with a bank, savings and loan association, credit union or like organization." *Ala. Code* Section 7–9–104(k) (1975).

█ Section 7–9–105(1)(g) of the Alabama Code (1975) defines the term "instrument" as it is used in Article 9. That section provides:

"Instrument" means a negotiable instrument (defined in section 7–3–104), or a security (defined in section 7–8–102) or any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any necessary indorsement or assignment.

*Ala. Code* Section 7–9–105(1)(g) (1975). A certificate of deposit is an "instrument" under Article 9, *Matter of Herren,* 10 B.R. 252, 255, 7 B.C.D. 535, 537, 31 U.C.C. 1109, 1113 (Bktcy.N.D.Ala.1981), whether it is negotiable or non-negotiable.[5] *See First Nat'l Bank v. Lone Star Life Ins. Co.,* 524 S.W.2d 525, 529 (Tex.Civ.App.1975); *Southview Corp. v. Kleberg First Nat'l Bank,* 512 S.W.2d 817, 819 (Tex.Civ.App.1974); *Ala. Code* Section 7–3–104(3) (1975). *See generally* Clark, *The Law of Secured Transactions under the Uniform Commercial Code* 7.8 (1980 & Supp.1984).

From the above discussion, it is clear that the Bank did not acquire an Article 9 security interest in the debtor's bank account (# 084–515–6) on July 6, 1981 the date of the initial loan transaction. On August 3, 1981, the Bank acquired a valid security interest in the certificate of deposit since this subject matter is within the scope of Article 9 and the requirements for attachment had been met. *See Ala. Code* Section 7–9–204 (1975). Because the Bank had possession of the certificate of deposit at all times, a signed security agreement was not necessary. *See Ala. Code* Section 7–9–203 (1975).

The Bank's possession of the certificate of deposit had the additional effect of perfecting its security interest. *See Ala. Code* Sections 7–9–302(1)(a), 7–9–304(1), 7–9–305 (1975). The Bank, however, lost it perfected status when the certificate of deposit was retired and the money placed in the savings account (# 084–517–2) since no financing statement was filed and since a security interest in a savings account cannot be perfected by possession. *Ala. Code* Section 7–9–305 (1975).

█ The Bank, therefore, did not have a perfected Article 9 security interest on September 2, 1983, the date of debtor's Chapter 7 petition. The Bank did, however, retain its rights to set-off pursuant to 11 U.S.C. Section 553 (1978). Thus, the Bank had a fully secured claim in the debtor's Chapter 7 estate. 11 U.S.C. Section 506 (1978).

█ While the Bank's set-off rights were subject to the automatic stay, 11 U.S.C. Section 553 (1978), and while the Bank's applying $1,391.07 to pay off the loan was a technical violation of the stay, the Court concludes that the Bank would be entitled to the money it applied to the loan if the Trustee were allowed to recover it. Because no other creditors, the Trustee, nor the debtor would be prejudiced by allowing

---

$245.22 to the loan; and on December 2, 1983 the Bank paid off the loan by applying $1,145.85 from the joint account number 084–517–2.

**4.** See *supra* n. 1.

**5.** Under the "new U.C.C." a certificate of deposit is expressly excepted from the definition of a depository account. *See Ala. Code* Section 7–9–105(1)(e) (1984 Supp.).

the Bank to keep the $1,391.07 it applied to the loan, the Court will leave the parties where it finds them with respect to this portion of the funds sought by the Trustee.

## B. The Interplead Funds

The Bank claims no interest in the $958.28 [6] remaining in the joint savings account after the loan was paid off on December 2, 1983. The ownership of these funds, therefore, must be determined according to the intent of the parties, *see Rankin v. First Nat'l Bank*, 416 So.2d 738, 740 (Ala.1982), at the time of the creation of the joint account. *See Lovett v. Uptain*, 450 So.2d 113, 114 (Ala.1983); *Jones v. Jones*, 423 So.2d 205, 207 (Ala.1982).

■ The Trustee contends that the Court should focus upon the intent of the debtor when the money was transferred from her savings account (# 084–515–6) and used to purchase the certificate of deposit (# 100702). The Trustee argues the debtor did not intend to relinquish dominion and control over the account.

The Court concludes, however, that at all times pertinent herein, the parties considered the money to be the property of Mrs. Mattie D. Hall. Mrs. Hall never intended to make a gift of this money to the debtor; she was merely letting the debtor use this money to secure the indebtedness owed to the Bank. The certificate of deposit was purchased at the direction of Mrs. Hall. Also, Ms. Dawson disclaimed any entitlement to the money in her affidavit accompanying Mrs. Hall's Motion for Summary Judgment. The Trustee has failed to controvert the declaration of intent in the affidavits of Mrs. Hall and Ms. Dawson as required by Rule 56(e) of the Federal Rules of Civil Procedure. *See* F.R.C.P. 56(e). Because the intent of the parties is not a genuine issue for trial, the court concludes that Mrs. Mattie D. Hall is entitled to the balance of the savings account number 084–517–2 at the First Alabama Bank of Sumter County.

---

**6.** This account has been accruing interest at the    rate of 5¼% per annun.