501 So.2d 453 (1986)
Dixie JOHNSON, as Executrix of the Estate of Comer Sims, and Dixie Johnson, Individually
v.
Roy SIMS and Joanna Greathouse, as Co-Executors of the Estate of Estha Sims, Deceased.
84-1311.
Supreme Court of Alabama.
November 14, 1986.
Rehearing Denied January 9, 1987.
*454 John L. Knowles of Kelly & Knowles, Geneva, for appellant.
M. Dale Marsh of Cassady, Fuller & Marsh, Enterprise, for appellees.

ON APPLICATION FOR REHEARING
PER CURIAM.
The original opinion is withdrawn and the following is substituted as the opinion of the Court.
This is an appeal from a judgment for defendants in plaintiff's action to determine ownership of certain certificates of deposit and other assets.
Between January 12, 1978, and January 12, 1982, J. Comer Sims purchased 16 certificates of deposit aggregating $59,406.18. J. Comer Sims died on November 15, 1982, survived by his widow, Estha Sims, and three children, Roy Sims, Dixie Sims Johnson, and Joanna Greathouse.
J. Comer Sims left a will which appointed Dixie Sims Johnson as executrix. After making certain specific bequests not in issue here, this will contained a residuary clause, viz.:

"THIRD: All the rest and residue of my estate, real, personal and mixed, I will, devise and bequeath unto my wife, *455 ESTHA SIMS, for her lifetime only and at her death to DIXIE S. JOHNSON, to have and to hold absolutely. In the event my wife should predecease me, then all the rest and residue of my estate, real, personal and mixed, I will, devise and bequeath unto my daughter, DIXIE S. JOHNSON, to have and to hold absolutely."
At the time of his death, the certificates of deposit were in a safe deposit box at the Enterprise Banking Company. Some of these certificates had been issued by that bank, while others had been issued by First Federal Savings and Loan Association of the Wiregrass ("First Federal"). All of the certificates of deposit in question had been issued in the names of "J. Comer Sims or Estha Sims or Dixie Sims Johnson," or a variation of these names, e.g., "Mr. or Mrs. Comer J. [sic] Sims or Dixie G. Sims."
Each issuing financial institution had an agreement with the persons so named in the form of a signature card, which J. Comer Sims, Mrs. J. Comer Sims, and Dixie S. Johnson executed. Written on the First Federal signature card were the numbers of the certificates of deposit issued by First Federal, and the card itself was issued as follows:
"A, Sims, Mr. Comer J. [sic] and B, Sims, Mrs. Comer J. [sic] and C, Johnson, Dixie, as joint tenants with right of survivorship and not as tenants in common, and not as tenants by the entirety."
The Enterprise Banking Company issued two signature cards. The first signature card was issued to "Mr. or Mrs. J.C. Sims" and was signed "J.C. Sims" and "Mrs. J.C. Sims." It contained the following clause:
"Right of Survivorship.
"You are authorized to recognize either of the signatures subscribed hereon in the payment of funds or the transaction of any business for or in connection with this account. When an account stands in the name of two or more persons payable to either or survivor, any items payable to the order of both or either of them may be endorsed by either depositor for credit to said account and payment to either depositor shall be a full discharge."
This clause was followed by the signatures of "J.C. Sims" and "Mrs. J.C. Sims." This card referred to "Certificate No. 2685."
Another such card, identical to the one above except for the names and signatures of the depositors and the certificate numbers, was issued subsequently. It referred also to Certificate No. 2685, but additionally referred to No. 3081. It was made out to "Mr. or Mrs. J.C. Sims or Dixie S. Johnson" and was executed by each.
Following her husband's death, Mrs. Estha Sims removed all of the certificates in question and had new certificates issued to her individually. Mrs. Sims also made a new will devising all of her property to her children Roy and Joanna, but excluding Dixie. Roy and Joanna were also named as co-executors.
Mrs. Estha Sims died on October 29, 1983. Roy Sims subsequently resigned as co-executor, leaving Joanna as sole executor. Joanna took possession of her mother's properties and the funds represented by the certificates.
Dixie Sims Johnson brought this action in two counts. Count I prayed for a declaration that the funds in question were the property of plaintiff and prayed that First Federal and the Enterprise Banking Company be enjoined from allowing withdrawals from such accounts. Plaintiff also contended that a $6,000 checking account in the Enterprise Banking Company was a joint account among the three parties, and that her mother had added the sums therein to the new certificates of deposit in violation of Dixie's right to that account. Count II claimed specified items of personal property from Roy Sims and Joanna Sims Greathouse.
The defendants' motions to dismiss were overruled. All defendants answered. Summary judgment was ultimately granted on behalf of First Federal and the Enterprise Banking Company. Summary judgment was also granted in favor of Roy *456 Sims in his capacity as co-executor, but denied as to him individually.
The trial court, sitting without a jury, tried the case and entered a final judgment holding that the certificates of deposit with First Federal and the Enterprise Banking Company at the time of J. Comer Sims's death "became the property of Estha Sims and not a part of the estate of Comer Sims." The court also held that "That certificate of deposit XXXXXXX-X for $5000 with [First Federal] and the $6000 in the Enterprise Banking Company are the property of the Estate of Estha Sims." Finally, the court rendered judgment for defendants in their individual capacities on Count II, finding a failure of proof.
The central issue for our review concerns the status of Dixie Johnson and Estha Sims as joint owners of the certificates of deposit after the death of Comer Sims.
There has been much confusion in the law on joint accounts. This Court has, at various times, applied the law of contracts, the law of gifts, and the law of joint tenancy to determine ownership of these accounts. Legislative action has added to the confusion.
For many years, this Court decided joint bank account ownership cases under a giftlaw approach. The Court would look for donative intent and proper delivery, e.g., of a passbook. Where the depositor retained some control over the account, the requisite intent to make a gift would be found to be missing. The Court also, at times, applied a contract approach to joint accounts.
In 1945, the legislature enacted two statutes, most recently codified as §§ 5-1-24 and -25, Code 1975, governing survivorship interests in joint bank accounts. These statutes precluded any inquiry (except as to fraud or mistake) into donative intent or other elements of a gift and established a presumption of ownership in the survivor. The presumption was rebuttable by a written expression of a contrary intention.
In 1980, the legislature repealed §§ 5-1-24 and -25 and replaced them with a bank-protective statute, § 5-5A-41. The presumption of ownership in the survivor, found in the prior sections, was eliminated by the enactment of the new section. Lovett v. Uptain, 450 So.2d 116 (Ala.1984). Section 5-5A-41 does nothing to clarify the law governing ownership of funds on deposit in joint accounts. It exists only to protect the banks. The comments to this section state: "This section concerns only the right of payment by the bank and does not govern ownership of the funds. Ownership is to be determined under other appropriate laws." In Parr v. Godwin, 463 So.2d 129 (Ala.1984), this Court, applying Code 1975, § 35-4-7, held that title to funds in a joint bank account set up after passage of § 5-5A-41 is to be determined according to the intentions of the parties as stated in the instrument which created the tenancy.
Jones v. Jones, 423 So.2d 205 (Ala.1982), involved a joint bank account established prior to 1980. The parties disagreed as to whether § 5-1-25 or § 5-5A-41 should govern. We held that the date on which the joint bank account is opened determines which statute applies.
There are separate rules which apply to joint accounts in savings and loan associations. In 1967, the legislature enacted a statute, now found at Code 1975, § 5-16-45, which governs the payment and ownership of jointly held funds on deposit in savings and loan associations. This Court first interpreted this statute in Street v. Hilburn, 295 Ala. 232, 326 So.2d 724 (1976), concluding that the intent and purpose behind this statute was to establish property rights in the survivor authorizing the payment of the account balance to him without a showing of either a donative intent on the part of the party furnishing the funds or delivery of the passbook or access thereto. Thus, the statute relieves the surviving joint tenant of the burden of establishing a gift inter vivos. Section 5-16-45 is substantially similar to the old bank statute, § 5-1-25, which precluded inquiry into donative intent. The savings and loan statute expressly applies to a deposit made in the names of more than two persons where there is a provision for survivorship. *457 Nowhere, however, does it provide that any one survivor of the first decedent becomes the full owner of the sums on deposit simply by withdrawing the money; rather, the statute is silent as to the rights between or among two or more survivors.
In Hines v. Carr, 372 So.2d 13 (Ala.1979), one of the two survivors of the first to die among three joint owners of a savings account at a savings and loan association sought a declaratory judgment as to her interest in the deposits as against the other survivor. The trial court held that the funds were the equal property of both survivors. The other survivor appealed, claiming that the decedent had made an inter vivos gift of these deposits to her alone. This Court affirmed, agreeing with the trial court that § 5-16-45 was dispositive of the rights asserted by the other survivor and holding that it precluded postdeath inquiries into the ownership of funds in a joint savings and loan account, "absent allegations of fraud, duress, mistake, incompetency or undue influence." Hines, supra, at 14 (citation omitted).
There is nothing in the record before us to indicate any fraud, duress, or undue influence on the part of Dixie against her father, nor is there any evidence of any mistake or incompetency on the part of Mr. Sims; indeed, there was no attempt to plead or prove any such circumstances. It is possible to envision that a separate writing might affect the disposition of an account after the death of one among several joint owners of an account, but again, this case does not present any such evidence. In fact, the form in which J. Comer Sims set up these certificates of deposit and the tenor of his will militate against a conclusion that he intended Estha to have sole ownership of these accounts after his death.
Thus, when J. Comer Sims died, the survivors, Estha Sims and Dixie Sims Johnson, each owned a one-half joint tenancy interest in the certificates in question. Estha's act of cashing the certificates amounted to a severance of the joint tenancy, from which time Dixie had a vested interest in one-half of the proceeds. See Code 1975, § 35-4-7. Accordingly, Dixie may trace her interest in these proceeds through the Estha Sims estate.
Regarding the ownership of the $6,000 checking account, there is not sufficient evidence in the record to warrant a reversal of the trial court's ore tenus finding in favor of the defendants, because there was no clear evidence that this sum should have been included in the estate of J. Comer Sims or should have passed to Dixie through a survivorship provision. The $5,000 certificate of deposit that the trial court specially found to be the property of Estha's estate was conceded at trial to reflect proceeds of an insurance policy on the life of Mr. Sims, of which Mrs. Sims was the beneficiary, so this portion of the judgment is not due to be reversed. Finally, the record supports the trial court's determination that there was a failure of proof of Dixie's rights to specific items of personal property.
For the foregoing reasons, the judgment of the trial court must be affirmed in part and reversed in part, and the cause remanded for an order consistent with this opinion. It is so ordered.
REHEARING GRANTED; ORIGINAL OPINION WITHDRAWN; AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.
JONES, ALMON, SHORES, HOUSTON and STEAGALL, JJ., concur.
TORBERT, C.J., and MADDOX and BEATTY, JJ., dissent.
TORBERT, Chief Justice (dissenting).
I take this opportunity to write, not to express my view as to why I disagree with the majority opinion,[1] but to express my *458 concern that we should have certainty in this area of the law.
"A joint bank account has been referred to as a poor man's will." 10 Am.Jur.2d Banks § 369 at 331 (1963). Unfortunately, the law pertaining to such accounts is uncertain enough, as the procedural history of this case illustrates, that the "poor man" may find that his purpose in establishing such an account has been frustrated.
Some confusion was introduced when the legislature repealed §§ 5-1-24 and -25, Code 1975, and replaced them with a bank protection statute, Code 1975, § 5-5A-41. Section 5-5A-41 does not establish any presumptions regarding ownership of jointly held funds in banks, as the repealed statutes did. However, § 5-16-45 does govern ownership of jointly held funds in savings and loan associations.
In the absence of a specific legislative pronouncement on the question of ownership of jointly held funds in bank accounts, we have resolved such questions with reference to § 35-4-7, which sets forth the general law with respect to survivorship between joint tenants. Parr v. Godwin, 463 So.2d 129 (Ala.1984). However, I have found no Alabama statute or case that specifically answers the question presented here, that is, how the two survivors of a bank account set up as a three-way joint tenancy with right of survivorship hold the property. Unlike the majority, I do not find Hines v. Carr, 372 So.2d 13 (Ala.1979), to be dispositive. I find that Hines did no more than reaffirm the general rule that upon the death of one party to the account, the survivors hold as joint tenants with right of survivorship, see 4 G. Thompson Real Property § 1779 (1979). In such a case, it is generally held that the parties hold the property equally. See 4 G. Thompson, supra, § 1776. In Hines, unlike the present case, neither survivor had withdrawn the funds at the time an action was filed. For examples of how other courts have resolved this problem, compare Frank v. Frank, 93 Nev. 659, 572 P.2d 530 (1977), with Comastri v. Burke, 137 Cal.App.2d 430, 290 P.2d 663 (1955).
In light of the extensive use of these accounts, I would hope that the legislature would address this issue and remove the cloud of uncertainty that exists.
BEATTY, Justice (dissenting).
It is clear that the certificates of deposit in this case were issued jointly, and it is equally clear that a right of survivorship among the payees was intended. The signature card issued in conjunction with the First Federal certificates referred to the three named depositors as joint tenants "with the right of survivorship." The Enterprise Banking Company signature card applicable to the three named depositors also established an "or" account and referred to "right of survivorship," which phrase was followed by the signatures of each.
In Rankin v. First National Bank of Fairhope, 416 So.2d 738 (Ala.1982), this Court recognized the survivorship quality of an account represented by a signature card so drawn and executed by the depositor. Thus, the certificates and the signature cards make it clear that the depositor established joint tenancies with the right of survivorship, without any ambiguity or incompleteness, as was found in Parr v. Godwin, supra. Cf. Harris v. Dial, 398 So.2d 679 (Ala.1981).
Additionally, Code of 1975, § 5-16-45, applicable to deposits in savings and loan associations, governs the ownership of such survivorship deposits:
"When a deposit has been made or shall hereafter be made in any savings and loan association in this state in the names of two persons, payable to either of such persons, or payable to the survivor of them, the said deposit shall, upon the death of either of said persons, become the property of and be paid in accordance with its terms to the survivor, irrespective of whether or not the funds deposited were the property of *459 only one of said persons, irrespective of whether or not at the time of the making of such deposit there was any intention on the part of the persons making such deposit to vest the other with a present interest therein, irrespective of whether or not only one of said persons, during their joint lives, had the right to withdraw such deposit and irrespective of whether or not there was any delivery of any account book or savings account book by the person making such deposit to the other of such persons. This section will also apply where a deposit is made in the names of more than two persons where there is a provision for survivorship."
Thus, when J. Comer Sims died, the certificates were payable, not to both Estha and Dixie as tenants in common, but to either of them as survivor. That is to say, since each was a survivor, either of them could have taken the certificates as her own after Comer's death, and that is precisely what Estha Sims did. Dixie Sims, therefore, had no interest in the proceeds of the certificates, title to which passed outside Comer Sims's will, once Estha had new certificates issued to her individually. See Ex parte Lovett, 450 So.2d 116 (Ala. 1984), and generally, 10 Am.Jur.2d Banks § 369 (1963) at 330-31.
I must confess my confusion over the majority's turnabout opinion, which, after some convolution, ultimately relies upon a decision, Hines v. Carr, 372 So.2d 13 (Ala. 1979), which was decided several years before Rankin v. First National Bank of Fairhope, 416 So.2d 738 (Ala.1982), and Lovett v. Uptain, 450 So.2d 116 (Ala.1984).
What is the law now on bank and savings deposits which are drawn among several living persons as "or" accounts? Are the multiple owners of these accounts tenants in common at that time? According to the majority, when one of those several persons later dies, it is now the law that any survivorship quality theretofore existing in such an account is by magic converted to a tenancy in common, whatever the language utilized by the parties.
Respectfully, I point out that that was not the law when the interests of the present parties arose.
MADDOX, J., concurs.
NOTES
[1] My view is set forth in the dissenting opinion of Justice Beatty. My only other observation concerning the majority opinion is that I know of no rule of law that supports the conclusion that Estha's act of cashing the certificates amounted to a severance of the joint tenancy.